**No. 16-2685**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

THOMAS E. PEREZ, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,
Plaintiff-Appellee,

v.

AMERICAN FUTURE SYSTEMS, INC. d/b/a
PROGRESSIVE BUSINESS PUBLICATIONS,
and EDWARD SATELL,
Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

**BRIEF FOR THE SECRETARY OF LABOR**

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

RACHEL GOLDBERG
Senior Attorney
Office of the Solicitor
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
(202) 693-5555
District of Columbia Bar No. 53351

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION........................................................ 1

STATEMENT OF THE ISSUES............................................................ 2

STATEMENT OF THE CASE................................................................ 2

    A.    Nature of the Case and Course of Proceedings .................................... 2

    B.    Statement of Facts ...................................................................... 4

    C.    Decision of the District Court ...................................................... 9

SUMMARY OF ARGUMENT ............................................................. 10

STANDARD OF REVIEW ................................................................... 13

ARGUMENT ...................................................................................... 13

    I.    PROGRESSIVE MUST COMPENSATE ITS
        TELEMARKETERS FOR <u>ALL</u> REST BREAKS OF
        TWENTY MINUTES OR LESS ...................................................... 13

        A.    WHD Has Consistently Required that All Rest
            Breaks of Twenty Minutes or Less Be Compensated
            as Hours Worked.................................................................. 14

        B.    Congress Effectively Ratified WHD's Interpretation............... 23

        C.    Courts Have Repeatedly Required that All Rest Breaks
            of Twenty Minutes or Less Be Compensated as Hours
            Worked.............................................................................. 24

Page

D.    It Is Reasonable to Require that All Short Rest
Breaks Be Compensated as Hours Worked ..............................28

E.    This Court Should Accord *Skidmore* Deference to
Section 785.18..........................................................................35

F.    Progressive's Supposedly Flexible Break Policy Does
Not Give It License to Violate the FLSA by Not Paying
Its Telemarketers the Minimum Wage During Short Rest
Breaks......................................................................................38

II.    THE DISTRICT COURT PROPERLY AWARDED
LIQUIDATED DAMAGES...............................................................46

CONCLUSION ...................................................................................... 57

CERTIFICATE OF COMPLIANCE...................................................... 58

CERTIFICATE OF DIGITAL AND HARD COPY SUBMISSIONS .................. 58

CERTIFICATE OF VIRUS CHECK ...................................................... 58

CERTIFICATE OF BAR MEMBERSHIP............................................... 59

CERTIFICATE OF SERVICE AND ECF COMPLIANCE................................. 60

ADDENDA:

Addendum A:  WHD Press Release No. R-837 (June 10, 1940)

Addendum B:  Field Operations Handbook H-14(V) (Dec. 1943)

Addendum C:  Field Operations Handbook 31a01 (Dec. 1955)

Addendum D:  Interpretative Bulletin, Part 785, Hours Worked,
Section 785.3(c) (Dec. 1955)

# TABLE OF AUTHORITIES

Cases:                                                                    Page

*Aboud v. City of Wildwood*,
    No. 12-7195 JS, 2013 WL 2156248
    (D.N.J. May 17, 2013)........................................................................27

*Aeromotive Metal Prods., Inc. v. Wirtz*,
    312 F.2d 728 (9th Cir. 1963)................................................. 30, 31, 45

*Albers v. Bd. of Cty. Comm'rs.*,
    771 F.3d 697 (10th Cir. 2014)............................................................43

*Aleynikov v. Goldman Sachs Grp., Inc.*,
    765 F.3d 350 (3d Cir. 2014)..............................................................13

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) .........................................................................45

*Armour & Co. v. Wantock*,
    323 U.S. 126 (1944) .........................................................................13

*Babcock v. Butler Cty.*,
    806 F.3d 153 (3d Cir. 2015)..............................................................34

*Ballard v. Consol. Steel Corp., Ltd.*,
    61 F. Supp. 996 (S.D. Cal. 1945) .................................................. 14, 18

*Bankston v. State of Ill.*,
    60 F.3d 1249 (7th Cir. 1995)........................................................ 54, 55

*Bernal v. Trueblue, Inc.*,
    730 F. Supp. 2d 736 (W.D. Mich. 2010)...........................................27

*Blunt v. Lower Merion Sch. Dist.*,
    767 F.3d 247 (3d Cir. 2014)..............................................................13

Cases--continued:                                                                Page

*Brennan v. Valley Towing Co.*,
    515 F.2d 100 (9th Cir. 1975)...............................................................44

*Brock v. Claridge Hotel & Casino*,
    664 F. Supp. 899 (D.N.J. 1987) .........................................................46

*Brock v. Claridge Hotel & Casino*,
    846 F.2d 180 (3d Cir. 1988)...............................................................50

*Brown v. L & P Indus., LLC*,
    No. 04-0379, 2005 WL 3503637 (E.D. Ark. Dec. 21, 2005) .............25

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008)...............................................................37

*Cobb v. Contract Transp., Inc.*,
    No. 04-305, 2007 WL 1810482 (E.D. Ky. June 21, 2007).................52

*De Asencio v. Tyson Foods, Inc.*,
    500 F.3d 361 (3d Cir. 2007)........................................................ 37, 44

*Garcia v. Allsup's Convenience Stores, Inc.*,
    167 F. Supp. 2d 1308 (D.N.M. 2001) ................................................56

*Grant v. Shaw Grp., Inc.*,
    No. 08-350, 2012 WL 124399
    (E.D. Tenn. Jan. 17, 2012) ......................................................... 50, 51

*Hagans v. Comm'r of Soc. Sec.*,
    694 F.3d 287 (3d Cir. 2012)...............................................................35

*Hawkins v. Alorica, Inc.*,
    287 F.R.D. 431 (S.D. Ind. 2012) ................................................ 26, 41

*Huggins v. United States*,
    No. 95-285C, 2005 WL 6112625
    (Fed. Cl. Aug. 16, 2005)....................................................................51

iv

Cases--continued:                                                  Page

    *IBP, Inc. v. Alvarez*,
        546 U.S. 21 (2005) ....................................................... 19, 23

    *Jones v. C & D Techs., Inc.*,
        8 F. Supp. 3d 1054 (S.D. Ind. 2014) ..................................26

    *Kasten v. Saint-Gobain Perform. Plastics Corp.*,
        556 F. Supp. 2d 941 (W.D. Wisc. 2008)..................................... 25, 41

    *Lacy v. Reddy Elec. Co.*,
        No. 11- 52, 2013 WL 3580309
        (S.D. Ohio July 11, 2013) ..................................................25

    *Lillehagen v. Alorica, Inc.*,
        No. 13-0092, 2014 WL 6989230
        (C.D. Cal. Dec. 10, 2014)....................................... 24, 25, 32

    *Marshall v. Brunner*,
        668 F.2d 748 (3d Cir. 1982) ..................................................47

    *Martin v. Cooper Elec. Supply Co.*,
        940 F.2d 896 (3d Cir. 1991)............................. 13, 46, 47, 48

    *Martin v. Selker Bros.*,
        949 F.2d 1286 (3d Cir. 1991) ..................................................47

    *Martin v. Waldbaum, Inc.*,
        No. 86-0861, 1992 WL 314898
        (E.D.N.Y. Oct. 16, 1992) ................................. 26, 41, 45, 46

    *McGuire v. Hillsborough Cty.*,
        511 F. Supp. 2d 1211 (M.D. Fla. 2007) .............................49

    *Mireles v. Frio Foods, Inc.*,
        899 F.2d 1407 (5th Cir. 1990)...........................................29

    *Mitchell v. Greinetz*,
        235 F. 2d 621 (10th Cir. 1956)........................... 14 & passim

Cases--continued:                                                                    Page

*Mitchell v. Turner*,
    286 F.2d 104 (5th Cir. 1960).................................................. 14, 29, 30

*Naylor v. Securiguard, Inc.*,
    801 F.3d 501 (5th Cir. 2015)........................................................ 28- 29

*Nelson v. Ala. Inst. for Deaf & Blind*,
    896 F. Supp. 1108 (N.D. Ala. 1995) .......................................... 51, 52

*Perez v. Mountaire Farms, Inc.*,
    650 F.3d 350 (4th Cir. 2011)................................................................44

*Petrone v. Werner Enters., Inc.*,
    No. 12-307, 2013 WL 3479280
    (D. Neb. July 10, 2013).......................................................................27

*Quirk v. Balt. Cty.*,
    895 F. Supp. 773 (D. Md. 1995) .........................................................56

*Reich v. Cole Enters., Inc.*,
    901 F. Supp. 255 (S.D. Ohio 1993), *aff'd sub*
    *nom. U.S. Dep't of Labor v. Cole Enters., Inc.*,
    62 F.3d 775 (6th Cir. 1995)......................................................... 25-26

*Rodriguez v. Farm Stores Grocery, Inc.*,
    518 F.3d 1259 (11th Cir. 2008)..........................................................55

*Rother v. Lupenko*,
    515 F. App'x 672 (9th Cir. 2013).......................................................26

*Sanders v. Elephant Butte Irrigation Dist.*,
    112 F.3d 468 (10th Cir. 1997)...................................................... 55-56

*Sandifer v. U.S. Steel Corp.*,
    134 S. Ct. 870 (2014) ................................................................... 32, 44

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) .............................................................. 9, 11, 35

Cases--continued:                                                                 Page

    *Smiley v. E.I. DuPont De Nemours & Co.*,
        – F.3d –, No. 14-4583, 2016 WL 5864508
        (3d Cir. Oct. 7, 2016) ........................................................13

    *Solis v. Cindy's Total Care, Inc.*,
        No. 10-7242, 2012 WL 28141
        (S.D.N.Y. Jan. 5, 2012) ....................................................25

    *Spiteri v. AT&T Holdings, Inc.*,
        40 F. Supp. 3d 869 (E.D. Mich. 2014) ..............................27

    *Steiner v. Mitchell*,
        350 U.S. 247 (1956) ..........................................................23

    *Townsend v. Mercy Hosp.*,
        862 F.2d 1009 (3d Cir. 1988) ............................................37

    *Walling v. Youngerman-Reynolds Hardwood Co.*,
        325 U.S. 419 (1945) ..........................................................43

    *Williams v. Tri-Cty. Growers, Inc.*,
        747 F.2d 121 (3d Cir. 1984) ..............................................47

Statutes:

    Fair Labor Standards Act of 1938,
        29 U.S.C. 201 *et seq.*:

        29 U.S.C. 202(a).................................................................37
        29 U.S.C. 203(o).................................................................32
        29 U.S.C. 204(a).................................................................36
        29 U.S.C. 206 ......................................................................2
        29 U.S.C. 206(a)...................................................................4
        29 U.S.C. 207(a).................................................................43
        29 U.S.C. 207(r).................................................................24
        29 U.S.C. 211(a).................................................................36
        29 U.S.C. 211(c)...................................................................3
        29 U.S.C. 216(b).................................................................46

Statutes--continued:                                                      Page

29 U.S.C. 216(c) ............................................................................3, 36
29 U.S.C. 217 ...................................................................................1, 3

Fair Labor Standards Amendments of 1949,
    Pub. L. No. 393, § 16(c),
    63 Stat. 910, 920 (1949) ...................................................................23

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, § 4207,
    124 Stat. 119, 577 (2010) .................................................................24

Portal-to-Portal Act of 1947,
    29 U.S.C. 251 *et seq.*:

    29 U.S.C. 260 ................................................................................47

28 U.S.C. 1291 ...................................................................................2
28 U.S.C. 1331 ...................................................................................1
28 U.S.C. 1345 ...................................................................................1

Code of Federal Regulations:

29 C.F.R. Part 778:

    29 C.F.R. 778.102 .........................................................................43
    29 C.F.R. 778.109 .........................................................................43
    29 C.F.R. 778.223 .........................................................................20

29 C.F.R. Part 785 ........................................................................ 14, 37

    29 C.F.R. 785.1 .............................................................................14
    29 C.F.R. 785.13 ...........................................................................41
    29 C.F.R. 785.16 ..................................................................... 22, 29
    29 C.F.R. 785.18 .................................................................. 2 & passim
    29 C.F.R. 785.19 ..................................................................... 20, 29
    29 C.F.R. 785.19(a) ................................................................ 20, 36
    29 C.F.R. 785.47 ...........................................................................44

Code of Federal Regulations--continued:                                    Page

      29 C.F.R. 785.48 ...................................................................44

   29 C.F.R. Part 790:

      29 C.F.R. 790.6(b)..............................................................19

Miscellaneous:

   26 Fed. Reg. 190 (Jan. 11, 1961)............................................. 16-17

   Federal Rules of Appellate Procedure 4(a)(1)(B) ...........................................2

   Field Operations Handbook:

      Index, http://www.dol.gov/whd/FOH/index.htm
      (last updated Aug. 13, 2013) ...............................................16

      31a01(a) (2016)
      https://www.dol.gov/whd/FOH/FOH_Ch31.pdf................................18

      31a01(c) (2016)
      https://www.dol.gov/whd/FOH/FOH_Ch31.pdf................................21

      31a01 (Dec. 1955) (Addendum C)......................................................16

      H-14(V) (Dec. 1943) (Addendum B)........................................... 15, 16

   Interpretative Bulletin, Part 785, Hours Worked,
   Section 785.3(c) (Dec. 1955) (Addendum D) ...............................................16

Miscellaneous--continued:                                                    Page

    Opinion Letters:

        FLSA2001-16, 2001 WL 1869965 (May 19, 2001) ..........................21
        (Feb. 19, 1998) (JA-909-10) (also available at 1998 WL 852687) ....18
        1996 WL 1005233 (Dec. 2, 1996)..................................... 18-19, 28, 32
        (Jan. 25, 1995) (JA-1361-62) ................................................ 18, 22-23
        1994 WL 1004840 (June 16, 1994)....................................................18
        1987 WL 1369158 (Sept. 11, 1987)...................................................18
        SCA-126 (Mar. 27, 1987) (JA-915-16)....................................... 18, 19
        (May 7, 1981) (JA-1357-60) .............................................................22
        FLSA-587 (Oct. 3, 1975) (JA-914)............................................. 18, 19
        (Aug. 15, 1973) (JA-1355-56)..........................................................22
        (Dec. 19, 1967) (JA-913) ......................................................... 18, 29
        (Oct. 13, 1964) (JA-1353-54)................................................ 18, 20, 22
        (Aug. 13, 1964) (JA-911-12, 1351-52) ............... 18, 19, 20, 22, 29, 46
        (Mar. 25, 1964) (JA-1349-50)..........................................................22

WHD Press Release No. R-837 (June 10, 1940)
(Addendum A) ............................................................................ 14 & passim

David Weil, *Flexibility and Fair Pay--You Can Have Both*
(Feb. 18, 2016), https://blog.dol.gov/2016/02/18/flexibility-
and-fair-pay-you-can-have-both/ (last visited Nov. 28, 2016)......................40

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 16-2685
_____

THOMAS E. PEREZ, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

Plaintiff-Appellee,

v.

AMERICAN FUTURE SYSTEMS, INC. d/b/a
PROGRESSIVE BUSINESS PUBLICATIONS,
and EDWARD SATELL,

Defendants-Appellants.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
_____

BRIEF OF THE SECRETARY OF LABOR
_____

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case pursuant to

section 17 of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. 217.

Jurisdiction was also vested in the district court under 28 U.S.C. 1331 (federal

question jurisdiction) and 28 U.S.C. 1345 (vesting jurisdiction in the district courts

over suits commenced by an agency or officer of the United States).

This Court has jurisdiction pursuant to 28 U.S.C. 1291.  The district court

entered an order on December 16, 2015 granting partial summary judgment to

Plaintiff-Appellee Secretary of Labor ("Secretary") and denying summary

judgment to Defendants-Appellants American Future Systems, Inc. d/b/a

Progressive Business Solutions and Edward Satell (collectively "Progressive"), and

entered a final judgment on May 11, 2016.  Joint Appendix ("JA") 35-37.

Progressive filed a timely notice of appeal on June 1, 2016.  *See* Fed. R. App. P.

4(a)(1)(B).

## STATEMENT OF THE ISSUES

1.  Whether the district court correctly concluded that the Department of

Labor's regulation at 29 C.F.R. 785.18 required Progressive to compensate its

employees for all of their rest breaks of twenty minutes or less under the FLSA.

2.  Whether the district court correctly concluded that Progressive failed to

show that it acted in good faith and therefore that liquidated damages were

warranted under the FLSA.

## STATEMENT OF THE CASE

A.    Nature of the Case and Course of Proceedings

On November 1, 2012, the Secretary filed a complaint against Progressive

alleging that it violated the minimum wage provision in section 6 of the FLSA, 29

U.S.C. 206, by failing to compensate its sales representative employees for break

2

periods of twenty minutes or less when Progressive required its employees to log-out of its computer and telephone system if they were not engaged in specified activities, such that all short breaks – including breaks lasting as little as three minutes – were unpaid. JA-43-49.[1]  The Secretary also alleged that Progressive failed to comply with the recordkeeping requirements of section 11(c) of the FLSA, 29 U.S.C. 211(c).  JA-43-49.  The Secretary sought to recover unpaid compensation owed to employees under the FLSA and an equal amount in liquidated damages, as well as a permanent injunction to enjoin Progressive from committing future violations of the FLSA.  *Id.*; *see* 29 U.S.C. 216(c), 217.[2]

On December 16, 2015, the district court granted the Secretary's motion for partial summary judgment in part, concluding that by not paying its employees for rest breaks of twenty minutes or less, Progressive violated the FLSA's minimum wage and recordkeeping requirements, that Progressive's CEO Edward Satell was an individual employer under the FLSA, and that liquidated damages were warranted.  JA-4-36.[3]  The court denied the Secretary's motion in part, concluding

---

[1] The Secretary has made clear in this litigation that Progressive was not required to compensate telemarketers for breaks longer than twenty minutes.  Accordingly, the Secretary has not sought back wages for these longer breaks.

[2] As with back wages, any liquidated damages recovered by the Secretary will be paid to the employees.

[3] Progressive has not appealed the conclusion that Mr. Satell is liable as an individual employer under the FLSA.

that there was no need to rule on the question of willfulness in light of the dates of the violations. *Id.*[4] The court denied Progressive's motion for summary judgment. *Id.*

On May 11, 2016, the court entered judgment awarding damages, consistent with the parties stipulation, in the amount of $1,916,000, comprised of $958,000 for unpaid minimum wages and $958,000 for liquidated damages. JA-37.

B.    Statement of Facts

Progressive creates business information publications and employs workers to sell those publications to business executives via telephone sales calls. JA-5, 38-39. These employees (hereinafter referred to as "telemarketers") number in the thousands and work or worked in fourteen call centers located in Pennsylvania, Ohio, and New Jersey. JA-5, 39; Supplemental Appendix ("SA") 13-53.[5]

During the relevant time period, Progressive compensated its telemarketers at a base rate of $7.25 per hour, which has been the federal minimum wage under the FLSA since 2009, *see* 29 U.S.C. 206(a), except in Ohio where Progressive paid the higher state minimum wage. JA-919-21; SA-1-12.

---

[4] The Secretary has not appealed the issue of whether Progressive's violations of the FLSA were willful.

[5] SA-13-53 shows that, as of July 8, 2014, the number of telemarketers to whom Progressive owed back wages for its rest break violations numbered over 6,500.

In 2009, Progressive adopted a company-wide break policy in which: (1) each telemarketer would determine for him or herself if and when to take breaks, for how long, and how often; (2) telemarketers would not be paid for any of the breaks, regardless of how long they were. JA-40; SA-1-12. Progressive's written compensation policy stated that telemarketers "may take personal breaks at anytime for any reason. Personal break time is NOT paid because it is a disadvantage to the [telemarketer] to do so." JA-40, 918.

Telemarketers' breaks were tracked through Progressive's timekeeping system, which required telemarketers to log-on and log-off Progressive's computer and telephone system at certain times. JA-6, 39. They logged-on when they arrived at work. JA-6, 39. They remained logged-on when making outbound sales calls, documenting the results of those calls in the computer system, receiving training, and performing other approved tasks. JA-6, 40. They were required to log-off the system anytime they were not engaged in these specific activities. JA-40, 247. They were required to log-off for all rest breaks, no matter how short. JA-40, 252-53, 578-79, 586-87. Thus, they were required to log-off when, for instance, they needed to use the bathroom, get coffee or a drink of water, or take a short break before making the next call such as after a particularly difficult or frustrating call. JA-285, 690, 1092-93, 1104-05, 1172-73. All log-ons/log-offs were recorded in Progressive's timekeeping system. JA-40-41.

Pursuant to its break policy, Progressive compensated telemarketers only for the time they were logged-on; Progressive did not compensate them for the time periods they were logged-off.  JA-6; SA-1-12.[6]  Thus, when a telemarketer needed a bathroom break before making the next call, he or she was required to log-off the system and go into uncompensated time.  JA-586-87.

Progressive's timekeeping data shows that the telemarketers were each paid, on average, for just over five hours per day, which did not include any breaks.  JA-907, 1054-57.  An average telemarketer took five breaks per day, which included breaks over twenty minutes; the average telemarketer's break time altogether totaled approximately sixty-five minutes.  JA-907.[7]  Of those five breaks, approximately one was longer than twenty minutes and four were twenty minutes or less (only these short breaks of twenty minutes or less are at issue in this case).  JA-907-08.  The majority of these four short breaks were very brief: an average telemarketer took three breaks per day that were less than ten minutes and of those, two were less than five minutes.  JA-908.

Telemarketers generally used their short breaks for brief respites from work and did not typically leave the premises or do anything beyond going to the

---

[6] It is undisputed, however, that telemarketers were compensated for any log-off periods of ninety seconds or less.  JA-7 n.5, 41.

[7] For ease of discussion in this brief, the Secretary has rounded all numbers to whole numbers.

bathroom, getting coffee, smoking a cigarette, making a phone call, or chatting

with a co-worker.  JA-285, 690.[8]  It is undisputed that telemarketers were not paid

for these short breaks of twenty minutes or less.  JA-41.

Numerous telemarketers stated that these short breaks were important to be

able to maintain the energy and attitude necessary to succeed in selling

Progressive's products over the phone.  JA-1083, 1097, 1119, 1131, 1180.  As

Progressive acknowledged, telemarketers need to have an energetic and positive

attitude and a strong and clear telephone voice to be effective in convincing

potential customers to purchase Progressive's products.  JA-193-94, 381-83, 498-

99, 638-41, 679.  Progressive conceded that some employees may benefit from

taking a break after a particularly frustrating call.  JA-386, 502-04.  The opinion of

the Secretary's expert confirmed that short breaks are essential in succeeding at the

challenging task of telemarketing and reducing the risk of burnout, and thereby

provide significant benefits to the company.  JA-804-32.

Progressive's pay structure and operations indirectly limited the number and

length of breaks that telemarketers could take.  Progressive required telemarketers

---

[8] Progressive cites numerous examples of activities that its telemarketers could engage in during breaks, such as working second jobs, taking classes, attending medical appointments, attending drug and alcohol counseling, renovating a home, giving piano lessons, attending children's sporting events, or volunteering at a child's school.  Br. 12-13, 32.  While Progressive does not discuss the length of time that would likely be required to engage in such activities, common sense suggests that most of these activities would require more than twenty minutes.

to specify the minimum number of hours that they would work (referred to as

"committed hours") during Progressive's two-week pay-period.  JA-40; SA-1-12.

Managers generally required that telemarketers commit to work a minimum of

forty and sometimes fifty hours in each pay-period.  JA-201-04.  Telemarketers

were subject to discipline, including termination, for not working their committed

hours.  JA-201-06, 401, 479, 516, 525-31, 939-43, 1059, 1082, 1252.  Progressive

sometimes sent a telemarketer home for the day if his or her sales were not high

enough, while still expecting that telemarketer to satisfy his or her committed

hours requirement for the pay period.  JA-1064, 1083, 1093, 1220, 1250.

Progressive maintained traditional office hours for its call centers during

which telemarketers could work to meet their committed hours (8:30 a.m. to 5:00

p.m.) and in some cases encouraged telemarketers to be at work by 9:00 a.m. and

to let their managers know if they would not be or would not work a certain day.

JA-201-06, 230-40, 402-07, 422, 525-31, 674, 948-49.  Progressive encouraged

telemarketers to make up hours during a pay-period if it appeared that a

telemarketer was not on track to meet his or her committed hours.  JA-231-33,

525-31.  It prohibited telemarketers, however, from working more than forty hours

in a workweek (which would cause Progressive to have to pay overtime

compensation).  JA-523.  Progressive had policies to put telemarketers on fixed

work schedules or daily requirements in order to work their committed hours if

Progressive determined it necessary. JA-940-47. Progressive's expert conceded that there were limits in terms of flexibility for telemarketers under Progressive's policies and operating structure. JA-336-37.

C.    Decision of the District Court

The district court granted partial summary judgment to the Secretary, concluding, in relevant part, that pursuant to the Department of Labor's ("Department") regulation at 29 C.F.R. 785.18, the FLSA required Progressive to pay its telemarketers for all rest breaks of twenty minutes or less and its failure to do so made it liable for minimum wage and recordkeeping violations. JA-4-34. It concluded that section 785.18, which states that rest breaks of twenty minutes or less must be compensated as hours of work, "should be afforded the most substantial deference permitted under the sliding-scale of *Skidmore* [*v. Swift & Co.*, 323 U.S. 134 (1944)]" because it falls within the expertise of the Department's Wage and Hour Division ("WHD"), which administers the FLSA, was effectively issued contemporaneously with the enactment of the FLSA, is WHD's long-standing and unchanging interpretation, and is consistent with the language and purpose of the FLSA. JA-15-20. The court further concluded that section 785.18 sets out a bright-line rule. JA-20-23.

The court also granted summary judgment to the Secretary on the issue of liquidated damages. JA-30-32. It outlined the evidence put forth by Progressive

and concluded that Progressive had failed to show that it acted in good faith in implementing its non-compensable break policy.  JA-31-32.

## SUMMARY OF ARGUMENT

1.  This case involves workers who earned less than the federal minimum wage of $7.25 per hour once their short rest breaks were included in the total number of hours they worked.  The district court correctly concluded as a matter of law that the regulation at 29 C.F.R. 785.18 requiring employers to compensate employees for rest breaks of twenty minutes or less sets out a bright-line rule. Therefore, Progressive violated the minimum wage provision of the FLSA when it failed to compensate its telemarketers for all short rest breaks of twenty minutes or less.

Since 1940, WHD has interpreted the FLSA to require that employers pay employees for <u>all</u> rest breaks of twenty minutes or less.  WHD has consistently reiterated that interpretation in the decades since, through the regulation at section 785.18, codified in 1961, and numerous opinion letters.  Courts have likewise relied on the interpretation in requiring employers to compensate employees for short rest breaks.  Requiring compensation as hours worked for all rest breaks of twenty minutes or less is based on the reasonable premise that, by virtue of their short duration, short rest breaks predominantly benefit the employer by helping employees maintain their energy and focus, thereby making them more effective

and productive workers, and by improving employee morale and employer-employee relations.  While employees certainly benefit from short breaks during the workday to use the bathroom, get coffee, or chat briefly with a coworker, these short breaks predominantly benefit the employer and it is therefore reasonable to require that employers compensate employees for <u>all</u> of them.  Because WHD's interpretation is long-standing, unchanging, based on WHD's expertise in administering the FLSA, and consistent with the FLSA and its broad remedial purpose, this Court should accord it substantial deference under *Skidmore*.

The flexibility that Progressive's break policy supposedly provided telemarketers does not give Progressive a free pass to flout years of well-established law requiring employers to compensate employees for short rest breaks.  This Court should reject Progressive's attempt to create a false dichotomy between compliance with the FLSA and providing flexibility to workers.  In fact, an employer can both comply with the FLSA by paying its employees for short rest breaks <u>and</u> provide its employees flexibility to take longer non-compensable breaks at the employees' discretion.  Moreover, employers have the ability to discipline employees if they take excessive compensable short breaks.  Employers control the workplace and the breaks taken within that workplace; they must, however, pay for short breaks that are taken.  This Court should also reject Progressive's novel argument that the fact that telemarketers decide whether,

when, and for how long to take a break permits Progressive not to pay the minimum wage for breaks that were actually twenty minutes or less. There simply is no basis in the statute, regulations, WHD's opinion letters, or the case law for that argument.

2. The district court correctly awarded liquidated damages by relying on this Court's ample precedent recognizing that such damages are mandatory unless the employer shows that it acted in good faith and with a reasonable belief that its actions complied with the FLSA. The evidence supports the district court's conclusion that Progressive failed to meet its substantial burden to show that it acted in good faith. Progressive presented evidence that Mr. Satell reviewed the FLSA and its regulations, including 29 C.F.R. 785.18, as well as WHD guidance and case law to determine if its break policy complied with the FLSA, and that after conducting this research Mr. Satell sought legal advice on the issue (but chose not to disclose the substance of that advice to support its good faith assertion). Mr. Satell's actions, considered apart from whatever legal advice Mr. Satell may have received, did not show good faith because the regulation and WHD guidance he consulted all show that Progressive was required to pay compensation for short breaks. The district court also noted that Mr. Satell did not disclose the substance of the legal advice that he received, and reasonably concluded in light of all this evidence that it could not infer that he had a good faith belief that Progressive

complied with the FLSA when it decided not to pay telemarketers for short rest breaks.

## STANDARD OF REVIEW

This Court employs a de novo standard of review of a district court's grant of summary judgment.  *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).[9]  It uses an abuse of discretion standard to review a district court's award of liquidated damages under the FLSA.  *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991).

## ARGUMENT

## I.   PROGRESSIVE MUST COMPENSATE ITS TELEMARKETERS FOR ALL REST BREAKS OF TWENTY MINUTES OR LESS

It is well established under the FLSA that work time for which employees must be paid, commonly referred to as "hours worked," is not limited to the time an employee is actively performing his or her job duties.  *See, e.g.*, *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Smiley v. E.I. DuPont De Nemours & Co.*, – F.3d –, No. 14-4583, 2016 WL 5864508, at *4 (3d Cir. Oct. 7, 2016) ("'[H]ours

---

[9] Progressive states that in reviewing the district court's grant of summary judgment to the Secretary, this Court must draw all reasonable inferences in Progressive's favor, Br. 19, but ultimately asks that this Court reverse the district court and order the entry of summary judgment for Progressive, Br. 30, 57.  It would be improper, of course, to draw all reasonable inferences in favor of Progressive and also order the entry of summary judgment for Progressive as that would contravene the directive to draw all inferences in favor of the non-moving party before granting summary judgment to the moving party.  *See Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 358 (3d Cir. 2014).

worked' includes time when an employee is required to be on duty, but it is not limited to 'active productive labor' and may include circumstances that are not productive work time."); *Mitchell v. Turner*, 286 F.2d 104, 105 (5th Cir. 1960). The regulations in 29 C.F.R. Part 785 outline "the principles involved in determining what constitutes working time [and] seek[] to apply these principles to situations that frequently arise." 29 C.F.R. 785.1. One of those situations is short rest breaks, which is addressed in section 785.18:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (*Mitchell v. Greinetz*, 235 F. 2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard v. Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996 (S.D. Cal. 1945)).

29 C.F.R. 785.18.

A.    <u>WHD Has Consistently Required that All Rest Breaks of Twenty Minutes or Less Be Compensated as Hours Worked.</u>

1. For over seventy-five years, WHD has, without deviation, interpreted the FLSA to require that employers treat <u>all</u> rest breaks of twenty minutes or less as hours worked and pay employees for such time. WHD first announced this interpretation in 1940, two years after the FLSA was enacted. *See* Addendum A (WHD Press Release No. R-837 (June 10, 1940) ("1940 Press Release")); *see also Mitchell v. Greinetz*, 235 F.2d 621, 624 (10th Cir. 1956) (citing 1940 Press Release

14

and concluding that two fifteen-minute rest breaks were compensable hours

worked).  The 1940 Press Release stated:

> Employees coming under the provisions of the [FLSA] <u>must be paid for short rest periods</u> ….
>
> A "<u>short</u>" rest period … <u>will include periods up to and including 20 minutes.</u>  When rest periods customarily taken by employees are longer, final decision on whether or not the employee will be paid for it will rest with the [WHD] Regional Director.
>
> The following considerations will guide the Regional Director in making his decision:  the freedom of the employee to leave the premises and go where he pleases during the intermission; the duration of the intermission—whether sufficient to permit the employee reasonable freedom of action and a real opportunity for relaxation; whether the intermission is clearly not an attempt to evade or circumvent the provisions of the [FLSA].

Addendum A (emphases added).  This Press Release demonstrates that, as early as

1940, WHD considered <u>all</u> breaks of twenty minutes or less to be short rest periods

for which compensation "must be paid."  It outlines the facts that should guide the

WHD Regional Director's determination of whether breaks longer than twenty

minutes are compensable hours worked.  Thus, the 1940 Press Release made clear

that factual considerations regarding the nature of the break come into play <u>only</u>

for breaks longer than twenty minutes.

In early versions of its Field Operations Handbook ("FOH"), WHD

repeatedly set out this same interpretation.  Addenda B (FOH H-14(V) (Dec.

1943)) and C (FOH 31a01 (Dec. 1955)).[10]  The 1943 FOH directed WHD

personnel to "[c]onsider <u>all</u> rest periods of twenty minutes or less as hours

worked[,]" and <u>only</u> in cases where a rest period is longer than twenty minutes and

is long enough to permit employees to use the period for their own purposes and is

not an attempt to evade or circumvent the FLSA should such periods not be

considered hours worked.  Addendum B (emphasis added).  The 1955 FOH stated:

> (a) Rest periods of short duration, running from 5 minutes to about 20
> minutes … <u>must be</u> counted as hours worked.

> (b) Where a regular rest period of known duration is longer than 20
> minutes, the waiting time rules apply.  In other words, if the
> employees are free to go where they please, and the rest period is long
> enough to permit the employees to use it for their own purposes, and
> if bona fide and not an attempt to evade or circumvent the FLSA …,
> such periods are not hours worked.

Addendum C (emphasis added).  Similarly, a 1955 Interpretative Bulletin stated

that short rest periods "must be counted as hours worked."  Addendum D

(Interpretative Bulletin, Part 785, Hours Worked, Section 785.3(c) (Dec. 1955)).

2.  In 1961, the Department promulgated the interpretive regulation at 29

C.F.R. 785.18, codifying its already-long-standing interpretation that short rest

breaks of twenty minutes or less are compensable hours worked.  *See* 26 Fed. Reg.

---

[10] The FOH "is an operations manual that provides [WHD] investigators and staff
with interpretations of statutory provisions, procedures for conducting
investigations, and general administrative guidance.…  The FOH reflects policies
established through changes in legislation, regulations, significant court decisions,
and the decisions and opinions of the WHD Administrator."
https://www.dol.gov/whd/FOH/index.htm (last updated Aug. 13, 2013).

190 (Jan. 11, 1961).  The regulation states that short rest breaks "<u>must be</u> counted as all hours worked[,]" making it a categorical requirement that all short breaks be compensated as hours worked.  29 C.F.R. 785.18 (emphasis added).

Progressive makes much of the regulation's citation to *Greinetz*, which relied on the specific facts before it in concluding that short breaks were compensable hours worked, to suggest that the regulation does not set out a bright-line rule.  Br. 30-33.  Progressive reads too much into the regulation's citation to *Greinetz*.  While it is true that the court in *Greinetz* noted that the facts must be considered in determining if rest periods are compensable hours worked, *see* 235 F.2d at 623, the court reasoned that not only was the WHD Administrator's interpretation in the 1940 Press Release and 1955 guidance "entitled to great weight[,]" but further concluded that "we [the court] are <u>in agreement with [the Administrator] as to the correct interpretation</u> of the Act as it relates to the question of short break periods."  *Id.* at 624-25 (emphasis added).  Given that the 1940 and 1955 WHD documents on which *Greinetz* relied treated <u>all</u> short rest breaks as compensable hours worked, there is no basis to infer that *Greinetz* was cited in the regulation for the proposition that the compensability of short rest breaks is necessarily dependent on the facts and circumstances.  Rather, it is reasonable to

infer that *Greinetz* was cited in the regulation because *Greinetz* explicitly endorsed the interpretation being codified in the regulation.[11]

3.  Since codification of this interpretation, WHD has issued numerous opinion letters citing section 785.18 and stating that rest breaks of twenty minutes or less are compensable hours worked.  *See* JA-909-10 (Opinion Letter (Feb. 19, 1998));[12] Opinion Letter, 1996 WL 1005233 (Dec. 2, 1996); JA-1361-62 (Opinion Letter (Jan. 25, 1995);[13] Opinion Letter, 1987 WL 1369158 (Sept. 11, 1987); JA-915-16 (Opinion Letter SCA-126 (March 27, 1987)); JA-914 (Opinion Letter FLSA-587 (Oct. 3, 1975)); JA-913 (Opinion Letter (Dec. 19, 1967)); JA-1353-54 (Opinion Letter (Oct. 13, 1964)); JA-911-12 (Opinion Letter (Aug. 13, 1964)); *see also* FOH 31a01(a) (2016), available at

https://www.dol.gov/whd/FOH/FOH_Ch31.pdf

In the 1996 opinion letter, WHD made explicit that section 785.18 sets out a bright-line rule:

---

[11] The other case cited in the regulation, *Ballard v. Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996, 1006 (S.D. Cal. 1945), stands for the proposition cited in the regulation that an employer is not permitted to offset compensation for short breaks against unpaid overtime compensation.

[12] This letter is also in the Westlaw database at 1998 WL 852687.

[13] This opinion letter is identical in language to an opinion letter in the Westlaw database, 1994 WL 1004840 (June 16, 1994), though it contains a different date. For consistency with the record, the Secretary cites the 1995-dated letter that is in the Joint Appendix.

> Employees have always taken short work breaks, with pay, for a
> myriad of non-work purposes – a visit to the bathroom, a drink of
> coffee, a call to check the children, attending to a medical necessity, a
> cigarette break, etc.  The Department has consistently held for over 46
> years that [short] breaks are hours worked under the FLSA, without
> evaluating the relative merits of an employee's activities.… We
> strongly believe that employers and employees are best served by <u>the
> bright line time test currently provided in Section 785.18</u>.

1996 WL 1005233 (emphasis added).  Other opinion letters also support this

conclusion.  *See* JA-915 (Opinion letter SCA-126 (Mar. 27, 1987) (rest periods or

work breaks of twenty minutes or less "must be counted as compensable hours

worked")); JA-914 (Opinion Letter FLSA-587 (Oct. 3, 1975) (same)); JA-911

(Opinion Letter (Aug. 13, 1964) (same)).

4.  The well-established concept of the "continuous workday" further

supports the bright-line rule in section 785.18.  Because all of the telemarketers'

breaks and other log-off periods occurred during the workday, they must be

presumed to be compensable working time under the continuous workday concept.

In *IBP, Inc. Alvarez v.*, 546 U.S. 21 (2005), the Supreme Court, consistent with

Department regulations, agreed that all activities between an employee's first

principal and last principal activity are part of the continuous workday.  *See id.* at

29 (citing 29 C.F.R. 790.6(b)).  The regulation affirmed in *Alvarez* clarifies that the

workday "includes all time within that period whether or not the employee engages

in work throughout all of that period."  29 C.F.R. 790.6(b).  Other regulations

similarly echo the concept that working time during the continuous workday is not

19

limited to actual active, productive work. *See, e.g.*, 29 C.F.R. 778.223

("[W]orking time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness."). Here, the breaks occurred after telemarketers arrived at the call center and began their first compensable activity (logging into the system and making calls), and before the end of the last principal activity (ending the final call of the day and logging off). JA-39-41, 928-33.

5. While section 785.18 presents a bright-line rule, there are very limited circumstances, not applicable here, that may warrant an exception. For instance, the regulation on meal breaks at 29 C.F.R. 785.19 states that bona fide meal breaks for which compensation need not be paid are ordinarily thirty minutes, but notes that "[a] shorter period may be long enough under special conditions." 29 C.F.R. 785.19(a); *see* JA-1353-54 (Opinion Letter (Oct. 13, 1964) (concluding that it is necessary to review all the facts to determine if a period of twenty minutes or less is a non-compensable bona fide meal break); JA-911-12 (Opinion Letter (Aug. 13, 1964) (noting that a twenty-minute break, "unless it is a bona fide lunch period, the short duration of which is caused by special conditions not in evidence in [the inquirer's] letter, must be counted as hours worked").

Similarly, an employer need not count unauthorized extensions of employer-authorized breaks as compensable hours worked when the employer has

communicated to the employee that the authorized break lasts for a specific length of time, any extension of the break is contrary to the employer's rules, and any extension of such break will be punished; in such limited circumstances, the employer is not obligated to compensate the employee for the unauthorized extension of the break. *See* Opinion Letter FLSA2001-16, 2001 WL 1869965 (May 19, 2001); FOH 31a01(c). Thus, for example, if an employer provides a fifteen-minute break to employees and an employee takes an eighteen-minute break, the employer is not obligated to compensate the employee for the extra three minutes of break taken as long as the employer has informed the employee that the authorized break is for fifteen minutes, that any extension of the fifteen-minute break is contrary to the employer's rules, and that the extension of the break will be punished. In short, the interpretation in section 785.18 is a bright-line rule with very limited exceptions. None apply to the instant case. As discussed in more detail below, the supposed flexibility of Progressive's break policy does not warrant a departure from the usual requirement that employees be paid for all short rest breaks.

6. Progressive argues in a footnote that WHD has not consistently applied section 785.18 as a bright-line rule. Br. 45 n.10. Progressive cites to six WHD opinion letters, JA-1349-62, and asserts that WHD urged in these letters the application of a "facts and circumstances" test. None of these letters, however,

21

supports Progressive's argument. Two of the letters are those discussed above, JA-1353-54 (Opinion Letter (Oct. 13, 1964) and JA-911-12 (Opinion Letter (Aug. 13, 1964),[14] which noted that in limited circumstances, periods of twenty minutes or less may be bona fide meal breaks. These letters support the application of a bright-line rule with limited exceptions. Two of the letters, one dated March 25, 1964 and the other May 7, 1981, are inapposite. The 1964 letter addressed the compensability under 29 C.F.R. 785.16 of waiting periods caused by variable weather conditions affecting the employer's off-shore operations. JA-1349-50. The 1981 letter addressed the compensability of travel and long periods of waiting time. JA-1357-60. Neither letter referenced section 785.18 or short rest breaks. Another of the letters, dated August 15, 1973 makes the unobjectionable statement that "[a]s long as the employee is paid in compliance with the monetary provision of the [FLSA], such matters as rest periods and scheduling of working hours are left for negotiation between the employer and employee or his bargaining representative." JA-1355-56 (emphasis added).

The last of the letters, dated January 25, 1995, cited *Greinetz* and stated that the cases must be decided in light of the particular facts and circumstances involved. JA-1361-62. However, the letter also stated unequivocally that it was WHD's "long-standing position that such breaks [of twenty minutes or less] must

---

[14] This letter is included twice in the Joint Appendix. The second time is at JA-1351-52.

be counted as hours worked" and ultimately concluded that short smoking breaks, even though the employer discouraged smoking, were compensable hours worked. *Id.* (emphasis added).  It would be unreasonable to interpret isolated language in this single letter as deviating from the years of WHD guidance applying section 785.18's bright-line rule.

B.     Congress Effectively Ratified WHD's Interpretation.

1.  Not only is WHD's interpretation first announced in 1940 a long-standing interpretation, but Congress ratified it in 1949 when enacting former section 16(c) of the FLSA.  *See Steiner v. Mitchell*, 350 U.S. 247, 255 n.8 (1956).  That provision stated:

> Any order, regulation, or interpretation of the Administrator of the Wage and Hour Division or of the Secretary of Labor … in effect under the provisions of the Fair Labor Standards Act of 1938, as amended, on the effective date of this Act, shall remain in effect as an order, regulation, interpretation, … except to the extent that any such order, regulation, interpretation … may be inconsistent with the provisions of this Act ….

Fair Labor Standards Amendments of 1949, Pub. L. No. 393, § 16(c), 63 Stat. 910, 920 (1949), 29 U.S.C.A. 208 note (emphases added).[15]  Because the interpretation that short rest breaks are compensable hours worked was in place as of 1940, this interpretation is among those that Congress indicated in 1949 should "remain in

---

[15] There is no contention that WHD's interpretation regarding the compensability of short rest breaks is inconsistent with the 1949 amendments, which primarily addressed the compensability of preliminary and postliminary activities and walking time.  *See Alvarez*, 546 U.S. at 26-27.

effect[.]"  Indeed, in concluding that two fifteen-minute breaks were compensable hours worked, the Tenth Circuit in *Greinetz* cited section 16(c) and explained that the WHD Administrator's interpretation that short rest breaks are compensable "should not lightly be set aside."  235 F.2d at 625.

2.  Moreover, Congress's more recent amendment of the FLSA to address breaks for female employees to express breastmilk, which was enacted as part of the Affordable Care Act, *see* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 4207, 124 Stat. 119, 577 (2010), bolsters the conclusion that all rest breaks of twenty minutes or less are compensable hours worked.  The amendment at issue requires employers to provide reasonable break time to a female employee to express breastmilk for her nursing child and further states that an employer is not required to compensate an employee for such breaks.  *See* 29 U.S.C. 207(r). As the district court below noted, if employers "were not otherwise required to compensate employees for breaks of 20 minutes or less, then the carve-out in § 207(r) would seem to be meaningless for breast milk breaks of less than 20 minutes.  Such surplusage is disfavored."  JA-26 n.23.

C.    Courts Have Repeatedly Required that All Rest Breaks of Twenty Minutes or Less Be Compensated as Hours Worked.

1.  Courts have repeatedly applied section 785.18's bright-line rule.  The district court in *Lillehagen v. Alorica, Inc.*, No. 13-0092, 2014 WL 6989230, at *1-2 (C.D. Cal. Dec. 10, 2014), confronted similar facts as presented here: the

24

employees worked in customer service and sales on the telephone and were

required to log-on and log-out of their phones and computers for timekeeping

purposes.  Often the employees were directed to log-out when taking a break.  *See*

*id.* at *3-4.  They were not paid for such periods, including periods of twenty

minutes or less.  *See id.*  The court explicitly considered whether section 785.18

contains a bright-line rule or whether the regulation merely provides that

compensation is usually but not always required for short rest breaks, and

concluded that "the more reasonable reading of Section 785.18 is that rest periods

must be counted as hours worked."  *Id.* at *8-11 (internal quotation marks

omitted).

Many courts have applied section 785.18's bright-line rule as a matter of

course without inquiring into the factual circumstances surrounding the breaks at

issue.  In concluding that fifteen-minute breaks were compensable, the district

court in *Brown v. L & P Indus., LLC*, No. 04-0379, 2005 WL 3503637, at *6 (E.D.

Ark. Dec. 21, 2005), stated that such breaks "'*must* be counted as hours worked.'"

(quoting section 785.18) (emphasis in decision).  *See also Lacy v. Reddy Elec. Co.*,

No. 11-52, 2013 WL 3580309, at *14 (S.D. Ohio July 11, 2013); *Solis v. Cindy's*

*Total Care, Inc.*, No. 10-7242, 2012 WL 28141, at *19 (S.D.N.Y. Jan. 5, 2012);

*Kasten v. Saint-Gobain Perform. Plastics Corp.*, 556 F. Supp. 2d 941, 953 (W.D.

Wisc. 2008); *Reich v. Cole Enters., Inc.*, 901 F. Supp. 255, 260 (S.D. Ohio 1993),

*aff'd sub nom. U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995). Citing section 785.18, the Ninth Circuit commented that "it is the general rule under federal law that breaks of less than thirty minutes are compensable." *Rother v. Lupenko*, 515 F. App'x 672, 674-75 (9th Cir. 2013). Some district courts have cited section 785.18 and concluded that breaks of twenty minutes or less were compensable "as a matter of law." *Jones v. C & D Techs., Inc.*, 8 F. Supp. 3d 1054, 1067, 1069 (S.D. Ind. 2014); *Martin v. Waldbaum, Inc.*, No. 86-0861, 1992 WL 314898, at *2 (E.D.N.Y. Oct. 16, 1992).

2. Courts have also relied on the regulation in certifying FLSA collective actions. Such certification is necessarily premised on the regulation setting out a bright-line rule rather than requiring an individualized factual inquiry into what each employee did during short rest breaks and whether the breaks predominantly benefitted the employer. *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 437 (S.D. Ind. 2012), involved the same employer as in *Lillehagen*, i.e., with a timekeeping log-on/log-off system and unpaid short breaks. In certifying the FLSA collective action, the court rejected the employer's argument that certification was inappropriate because the circumstances surrounding each individual break may vary. *See id.* at 442. The court noted that the employer had log-on/log-out data that accurately reflected the number of unpaid breaks of twenty minutes or less per day that employees took. *See id.* at 443. Thus, it is fair to say that section 785.18,

particularly when applied to clear employer time records, precludes the need for an

individualized inquiry. *See Petrone v. Werner Enters., Inc.*, No. 12-307, 2013 WL

3479280, at *3-5 (D. Neb. July 10, 2013) (rejecting employer's argument that

employees' claims depended on individualized showings that employees were

engaged in activities that predominantly benefitted employer during short breaks

and, citing section 785.18, concluding that short breaks predominantly benefitted

the employer); *see also Aboud v. City of Wildwood*, No. 12-7195, 2013 WL

2156248, at *6 (D.N.J. May 17, 2013).  Thus, the district court in the instant case

did not forge new ground in applying the regulation's bright-line rule requiring

compensation for <u>all</u> breaks of twenty minutes or less.[16]

---

[16] Neither *Bernal v. Trueblue, Inc.*, 730 F. Supp. 2d 736 (W.D. Mich. 2010), nor *Spiteri v. AT&T Holdings, Inc.*, 40 F. Supp. 3d 869 (E.D. Mich. 2014), on which Progressive relies, Br. 33-35, requires a different conclusion.  *Bernal* is inapposite because it involved waiting time, not short workday breaks.  *See* 730 F. Supp. 2d at 741-45.  The issue concerned whether waiting time, which generally was at least one-hour in length, was time when employees were "waiting to be engaged" (not work time) or "engaged to wait" (work time).  *Id.*  The breaks at issue here were not only much shorter, but they cannot be characterized as time telemarketers were "waiting to be engaged."

*Spiteri* presents an example of a specific limited exception to the bright-line rule in section 785.18.  There, the employer provided all employees with two fifteen-minute paid breaks.  *See* 40 F. Supp. 3d at 871-72.  The plaintiff in *Spiteri* needed additional breaks to stand and walk as an accommodation for his back pain.  *See id.* The district court concluded that the plaintiff did not have a right to take unlimited short compensable breaks for an accommodation that benefitted only that employee.  *See id.* at 879.  *Spiteri* exemplifies the specific limited circumstances that may warrant an exception: where an employee requires an accommodation for a medical condition or disability that entails taking repeated short breaks, it is

D.    It Is Reasonable to Require that All Short Rest Breaks Be Compensated as
Hours Worked.

1.  There is good reason for treating _all_ rest breaks of twenty minutes or less

as hours worked and requiring employers to compensate employees for such time.

As courts and WHD have long recognized, while short rest breaks benefit

employees, such breaks predominantly benefit employers.  One reason is that short

rest breaks generally promote employee efficiency and productivity.  In concluding

that two fifteen-minute rest breaks were compensable hours of work under the

FLSA, the Tenth Circuit in _Greinetz_ reasoned:

> While no doubt [short rest breaks] are beneficial to the employees,
> they are equally beneficial to the employer in that they promote more
> efficiency and result in a greater output, and that this increased
> production is one of the primary factors, if not the prime factor, which
> leads the employer to institute such break periods.

235 F.2d at 625.  WHD recognized this principle in the regulation, stating that

short rest breaks "promote the efficiency of the employee[.]"  29 C.F.R. 785.18;

_see_ Opinion Letter, 1996 WL 1005233 (same).

The Fifth Circuit recently examined the difference between compensable

short rest breaks and non-compensable thirty-minute meal breaks.  _See Naylor v._

_Securiguard, Inc._, 801 F.3d 501 (5th Cir. 2015).  In distinguishing between the

---

reasonable to conclude that the accommodation renders the break predominantly
for the employee's benefit and therefore non-compensable.  The instant case,
however, in which Progressive seeks a broad exception for all of its telemarketers,
is clearly distinguishable.

two, the court noted that the rest period and meal break regulations at sections

785.18 and 785.19, respectively, "make the duration of the break the key factor" in

determining whether a break is compensable. *Id.* at 505. "The reason for the

temporal distinction is that a shorter break is deemed to predominantly benefit the

employer by giving the company a reenergized employee." *Id*; *see Turner*, 286

F.2d at 105 (rejecting conclusion that two fifteen-minute rest periods were

predominantly for the employees' benefit in light of evidence that the workers

"returned to work with renewed energy and made fewer mistakes" and that rest

periods lead to an increase in production and decrease in absenteeism and

employee turnover). While *Greinetz*, *Naylor*, and *Turner* applied a "facts and

circumstances" analysis, they articulated this reasoning in generally applicable

terms.[17]

---

[17] In a similar vein, WHD has described the reasoning behind the premise that short breaks predominantly benefit the employer in terms of whether the break is sufficiently long to permit the employee to use the time effectively for his own purposes. *See* JA-913 (Opinion Letter (Dec. 19, 1967)) ("Normally, a break of less than 20 minutes is not sufficient to allow the employee to utilize the time for his own purposes[.]"); JA-912 (Opinion Letter (August 13, 1964)) ("It is the experience of the [WHD] that normally a break of 20 minutes is not sufficient to allow the employee to utilize the time for his own purposes."); *cf. Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1413 (5th Cir. 1990) (rejecting application of the regulation on non-compensable off-duty periods in 29 C.F.R. 785.16 to waiting periods of fifteen minutes because "[b]y definition, waiting periods of less than fifteen minutes <u>must</u> be of such short duration that plaintiffs cannot effectively use the time for their own purposes") (emphasis in original).

Indeed, the facts in the instant case bear out the premise underlying the bright-line rule. The evidence in the record demonstrates that telemarketers' short rest breaks predominantly benefitted Progressive. Progressive acknowledged that an important part of a telemarketer's job is to maintain a strong and clear telephone voice, a high energy level, and a positive attitude in order to successfully sell Progressive's products to prospective customers. JA-193-94, 381-83, 498-99, 638-41, 679. The job is competitive, with telemarketers sitting close to one another. JA-495-97. Short breaks allow telemarketers to restore their energy level prior to resuming their calls. JA-1083, 1097, 1119, 1131, 1180. Progressive conceded that some employees would benefit from taking a break after a particularly frustrating call. JA-386, 502-04. Indeed, the Secretary's expert noted that in a high-turnover industry like telemarketing, where burnout is common, breaks are even more important because they mitigate burnout and save the employer the time and expense of hiring and training new employees. JA-804-32.

While courts have noted that short rest breaks generally promote employee efficiency, they have not required that employees produce evidence that particular rest breaks increase their productivity. The Ninth Circuit rejected that very argument in *Aeromotive Metal Products, Inc. v. Wirtz*, 312 F.2d 728, 729 (9th Cir. 1963). The employer in that case cited *Greinetz* and *Turner* to argue that the short rest breaks its employees took were non-compensable because the employees had

no evidence that the rest breaks increased their productivity. *See id.* In rejecting

that argument, the court explained that neither case stands for the proposition that a

rest break predominantly benefits the employer only if production increased as a

result of the rest break. *See id.* Thus, regardless of Progressive's expert opinion

asserting that the telemarketers' rest breaks did not increase their sales

productivity, Br. 14, 32, 43, which the Secretary disputed and which the district

court concluded it did not need to consider, JA-4-5 & 5 n.2, a factual inquiry into

whether particular rest breaks increased productivity is not necessary.

2. Short rest breaks also serve to boost employee morale and improve

employer-employee relations and thereby reduce employee turnover. *See*

*Aeromotive Metal Prods.*, 312 F.2d at 729 (fifteen-minute rest period

predominantly benefitted the employer and therefore was compensable because

"[t]he employees felt better after the rest period, and the granting of this rest period

by defendant improved defendant's employer-employee relationships") (internal

quotation marks omitted).

3. Moreover, requiring compensation for all rest breaks of twenty minutes

or less is practical and simple for employers to administer (as well as litigants and

courts). The converse – requiring an individualized factual inquiry into what

employees do during short rest breaks and determining whether those activities

predominantly benefit the employer or employee – is not only highly impractical,

but would likely strain employer-employee relations.  As WHD explained in its

1996 Opinion Letter, applying the rule on a case-by-case basis "would require a

series of tests to evaluate the relative benefit provided to employee and employer

and the impact on employee efficiency of each and every small work break ever

taken by any employee."  1996 WL 1005233.  WHD reasoned that "such tests

would be an undesirable regulatory intrusion in the workplace with the potential to

seriously disrupt many employer-employee relationships.  Further, it would be

difficult, if not impossible, to design practical tests applicable to all workplace

circumstances."  *Id.*

Consistent with that reasoning, the district court in *Lillehagen* concluded that

"[a] simple imperative that all rest periods must be compensated" is the most

practical approach.  2014 WL 6989230, at *8.

> [A bright-line rule] saves the factfinder from having to inquire into the
> minutiae of an employee's break activities.  A factfinder would not
> have to ask, for instance, whether chatting for a few minutes with a
> co-worker in the bathroom counts as part of a "bathroom break" or
> whether stopping at the ATM is part of a "coffee break," etc.,
> precisely the type of questions that the [Department] wished to avoid.

*Id.* at *10 (citing the 1996 Opinion Letter); *cf. Sandifer v. U.S. Steel Corp.*, 134 S.

Ct. 870, 880 (2014) ("[I]t is most unlikely that Congress meant § 203(o) [defining

"hours worked" under the FLSA] to convert federal judges into time-study

professionals.").

It is difficult to imagine a more intrusive (and absurd) situation than, for example, requiring an employer to inquire into the subject of a conversation between co-workers in the bathroom to determine if it predominantly benefitted the employer.  Not only is this highly intrusive, but for a workplace with more than a few employees, each of whom may go to the bathroom or take a brief rest break a couple of times a day, as Progressive's telemarketers did here, the volume of individual inquiries necessary would likely cost more in administrative costs than paying employees their wages, in this case minimum wage, during these short rest breaks.

This case illustrates the practicality of applying a bright-line rule rather than examining each and every break to determine whether it predominantly benefitted the employer or the employee.  There are more than one million uncompensated breaks of up to twenty minutes in this case.  JA-907-08.  A detailed inquiry into every such break would be burdensome and impractical, as well as disruptive to the employer-employee relationship.

In sum, the interpretation in section 785.18 is based on the reasonable premise that short rest breaks (i.e., twenty minutes or less) are inherently for the predominant benefit of the employer, not the employee, and therefore <u>all</u> short rest breaks of twenty minutes or less are compensable hours worked under the FLSA. While employees also undoubtedly benefit from taking short breaks during the

workday, the limited duration of these short breaks make them predominantly beneficial to the employer.[18]

4. Finally, it bears noting that, while Progressive argues that the regulation at section 785.18 should not be applied as a bright-line rule requiring compensation for rest breaks of twenty minutes or less, Br. 28-30, 38-40, it is asking this Court to rule that <u>none</u> of the short rest breaks taken by its telemarketers are compensable hours worked and to order the entry of summary judgment in its favor, Br. 29-30. Progressive's position leaves no room for any of the short breaks at issue to be deemed compensable hours worked. Permitting Progressive to avoid paying for short rest breaks would have significant negative consequences for these

---

[18] At certain points in its brief, Progressive suggests that an employer's control over an employee is the proper indication of whether a period of time is hours worked. Br. 26-27. Progressive nonetheless repeatedly acknowledges that the issue of whether various types of non-productive time are compensable hours worked, such as on-call time, waiting time, overnight shifts, and meal breaks, has traditionally been analyzed through the lens of whether such time predominantly benefits the employer or employee. Br. 21, 38-39. One of the cases Progressive cites is *Babcock v. Butler County*, 806 F.3d 153, 155 (3d Cir. 2015), in which this Court concluded that the employees' meal break was a bona fide (non-compensable) one because the meal break time predominantly benefitted the employees. While *Babcock* presented a different question – whether a one-hour meal period was a bona fide non-compensable meal break – than is presented here, the Secretary's position in this case is consistent with *Babcock*. As explained above, the bright-line rule in section 785.18 is premised on the reasonable notion that breaks of twenty minutes or less, by virtue of their short duration, are inherently for the predominant benefit of the employer, and consequently are compensable hours worked. Therefore, there is no need for an individual factual inquiry, such as in *Babcock*, into whether the telemarketers' short breaks predominantly benefitted Progressive.

telemarketers, who earned less than the minimum wage when the short breaks were included as part of the total hours worked.  It would likewise potentially have significant negative consequences for low-wage workers generally if employers are given free rein not to pay employees for short breaks to use the bathroom, for example.

E.    This Court Should Accord *Skidmore* Deference to Section 785.18.

This Court should defer to section 785.18 as persuasive authority under *Skidmore*.  In determining whether an agency's interpretation should be accorded such deference, this Court looks at whether the agency's interpretation: (1) was issued contemporaneously with the statute at issue; (2) is long-standing and unchanging; (3) is consistent with other agency interpretations; (4) is within the agency's expertise in administering the statute; and (5) is reasonable in light of the statute's language and purpose.  *See Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 304-05 (3d Cir. 2012).  This Court has interpreted "the *Skidmore* framework as a 'sliding-scale' test in which the level of weight afforded to an interpretation varies" depending on the Court's analysis of these factors.  *See id.* at 304.  Consideration of all of these factors counsels strongly in favor of according substantial deference section 785.18's bright-line rule.

1.  WHD first set out its interpretation that the FLSA requires compensation as hours worked for <u>all</u> rest breaks of twenty minutes or less in the 1940 Press

Release, which was issued less than two years after the FLSA was enacted.  The

district court here conducted a detailed review of the enactment of the FLSA,

noting the creation of the position of the WHD Administrator and the fact that the

Administrator was tasked with enforcing the FLSA, as well as WHD's "flurry of

activity" to enforce the FLSA "in its infancy[.]"  JA-16-17.  Thus, as the district

court concluded, the 1940 Press Release was effectively promulgated

contemporaneously with the enactment of the FLSA.  *Id.*

2.  As outlined above, section 785.18 represents WHD's long-standing

interpretation, first set out in 1940 and reiterated repeatedly over the seventy-five

years since.

3.  This interpretation is consistent with other agency interpretations, such as

the regulation at section 785.19, which distinguishes compensable short breaks

from non-compensable bona fide meal breaks of at least thirty minutes.  *See* 29

C.F.R. 785.19(a) ("Bona fide meal periods do not include coffee breaks or time for

snacks.  These are rest periods.").  It is also consistent with the Department's

interpretation of the continuous workday, as explained above.  Progressive has not

pointed to any WHD interpretation that is inconsistent with the interpretation in

section 785.18.

4.  Congress delegated authority to the WHD Administrator to administer

and enforce the FLSA, *see* 29 U.S.C. 204(a), 211(a), and 216(c), and the

interpretation that short rest breaks are compensable hours worked is the product of WHD's expertise in carrying out that authority.  JA-15-16.  "The long-standing regulations in Part 785 reflect the Department's expertise on interpretive questions that are essential to the administration of the Act."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008); *see Townsend v. Mercy Hosp.*, 862 F.2d 1009, 1012-13 (3d Cir. 1988) ("[T]he [WHD] Administrator's expertise acquired through day-to-day application of the statute makes us hesitant to contravene such opinions unless the statute plainly requires otherwise.").

5.  Lastly, this interpretation is consistent with the FLSA's language and purpose requiring employers to pay employees for all hours of work.  This Court has long recognized the FLSA's broad remedial purpose.  *See De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007).  Congress enacted the FLSA to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers …."  29 U.S.C. 202(a).  As the district court noted,

> [b]y ensuring that employees do not have their wages withheld when they take short breaks of 20 minutes or less to visit the bathroom, stretch their legs, get a cup of coffee, or simply clear their head after a difficult stretch of work, the regulation undoubtedly protects employee health and general well-being by not dissuading employees from taking such breaks when they are needed.

JA-19.  In light of this remedial purpose, it is reasonable to require Progressive to pay its telemarketers the federal minimum wage during short breaks commonly used to go to the bathroom, get coffee, or chat with a co-worker.

F.   Progressive's Supposedly Flexible Break Policy Does Not Give It License to Violate the FLSA by Not Paying Its Telemarketers the Minimum Wage During Short Rest Breaks.

1.  Implicit in Progressive's arguments is that the flexibility that its break policy supposedly provided to telemarketers somehow makes Progressive exempt from the rule requiring employers to compensate employees for all breaks of twenty minutes or less.  This is a central theme of Progressive's brief, as well as the brief by the amicus in support of Progressive.  Progressive claims that its break policy provided telemarketers workplace flexibility by permitting them to take breaks whenever they wanted, for as long as they wanted, and as often as they wanted.  Br. 23-24.[19]  There are several problems with Progressive's arguments.

2.  In justifying its policy of not paying employees for any breaks, including those that are twenty minutes or less, Progressive is essentially asserting that the only way it can provide flexibility to its employees is by not paying them the

_____

[19] The Secretary strongly disputes Progressive's conclusory assertion that its break policy provided flexibility to telemarketers.  As noted in the Statement of Facts, the reality is that Progressive's work policies and pay structure significantly curtailed such flexibility.  Moreover, contrary to Progressive's assertion, Br. 25, the number of short breaks that the telemarketers took were no more numerous than in a typical workplace.  Telemarketers took, on average, four breaks per day that were twenty minutes or less; of those four breaks, two were less than five minutes and one was less than ten minutes.  JA-908.

minimum wage for short rest breaks.  Br. 41-43.  This argument rests on a false

dichotomy between providing flexibility to telemarketers and complying with the

FLSA.

In fact, Progressive could enact a break policy giving telemarketers

flexibility in terms of when to take breaks, for how long, and how often, and not

run afoul of the FLSA as long as it pays its telemarketers the minimum wage for

all breaks taken that are twenty minutes or less.  The Secretary has consistently and

repeatedly noted that there is no requirement that Progressive compensate

telemarketers for breaks of more than twenty minutes.  Progressive can therefore

permit telemarketers to engage in many of the activities that it discusses in its brief,

which generally take at least twenty minutes, such as attending medical

appointments, caring for children or elderly parents, attending children's sporting

events, working second jobs, taking classes, attending drug and alcohol counseling,

or renovating a house.  It need not compensate telemarketers for such break time.

The only requirement that all employers, including Progressive, must adhere

to is to pay their employees for breaks that are twenty minutes or less.  In this case,

given Progressive's log-on/log-out timekeeping system that tracks time by the

minute, it would be quite simple for Progressive to have paid telemarketers the

minimum wage for these short breaks.  If an employer such as Progressive is

concerned that employees will take an excessive number of compensable short

breaks, the employer can, for example, restrict short breaks but still permit employees to take unlimited longer, non-compensable breaks at the employees' discretion. The regulation does not affect Progressive's ability to control the number or duration of short breaks.

While Progressive accurately notes, Br. 10-11, 41, that the Department has advocated generally for flexibility in workplaces, the Department has never suggested that an employer provide flexibility at the expense of paying employees the wages required under the FLSA. On the contrary, as the WHD Administrator recently noted on the Department's website in a discussion of flexibility in the workplace, "[w]e must not be drawn into a false choice between flexibility on the job and basic labor standards that protect workers' earnings[.]" *See* https://blog.dol.gov/2016/02/18/flexibility-and-fair-pay-you-can-have-both/ (last visited Nov. 28, 2016). Employers can provide their employees with flexibility <u>and</u> comply with the FLSA.

3. Progressive offers examples of employees taking excessive breaks in an effort to show that the only way it can provide flexibility to telemarketers without their abusing the flexible break policy is by not paying them for <u>any</u> breaks, even short ones to use the bathroom or get a drink of water. Br. 27-28. Specifically, Progressive imagines an employee who works for five minutes, takes a nineteen-minute break, works again for five minutes, takes another nineteen-minute break,

and so on.  Br. 27.  It also imagines an employee "taking repeated shots of alcohol" during those nineteen-minute breaks.  Br. 28.  Progressive seems to imply by these examples that it is helpless as an employer to do anything about this conduct.

Progressive's argument is unpersuasive.  As with any employer, Progressive is free to discipline its workers for abusing its break policy or drinking alcohol on the job.  Several courts have recognized that the proper response to employees' excessive or abusive use of breaks is for the employer to discipline and manage its workforce, not to withhold lawfully owed wages.  *See Waldbaum*, 1992 WL 314898, at *2; *Kasten*, 556 F. Supp. 2d at 953.  Indeed, managing its work force is part and parcel of being an employer.  *Cf.* 29 C.F.R. 785.13 ("[I]t is the duty of the management to exercise its control ….  It cannot sit back and accept the benefits [of employees' work] without compensating for them.…  Management has the power to enforce [work] rule[s] and must make every effort to do so.").  In concluding that employers must compensate employees for unscheduled breaks of twenty minutes or less, the district court in *Hawkins* explained that "[w]hile this rule may seem to lead to a slippery slope, where the employee is taking multiple, unscheduled nineteen minute breaks … the employer's recourse is to disciple or terminate the employee – not to withhold compensation."  287 F.R.D. at 442.  Progressive cannot use the unlawful withholding of minimum wages from its telemarketers as a way to manage its workforce.

4.  Progressive also argues that the fact that the telemarketers decide the duration of their breaks makes all breaks non-compensable, without regard to the amount of time that the telemarketers actually took during their breaks.  Br. 23-27, 29-30, 42.  There is no merit to Progressive's argument.  Breaks that are twenty minutes or less do not change from being compensable short breaks to non-compensable short breaks because an employee decides for how long to take a break.  Progressive has not pointed to any authority to support the idea that the amount of time an employee could have taken during a break determines whether the break is compensable hours worked or not.  Nor could it as there is no support in the statute, regulations, or case law for this novel proposition.  The actual amount of time taken during a break, not the amount of time that an employee could have taken, determines whether it is a compensable short break or a non-compensable longer break.[20]

As with many aspects of the FLSA, the compensable hours worked by an employee is determined based on the actual facts of what occurred, not what could have occurred.  Although this is a minimum wage case, overtime cases are instructive in showing the importance of what actually occurred to determine if an

---

[20] Progressive similarly argues that the district court should have analyzed whether its break policy predominantly benefited telemarketers, not whether the short breaks that the telemarketers actually took were compensable.  Br. 26, 29-30, 35. Again, Progressive offers no support for the proposition that an employer's policies, rather than the actual facts of what occurred, are the proper measure of whether the employer complied with the FLSA.

employer has complied with the FLSA.  The question of the total hours worked

often arises in the context of overtime because the actual total hours worked is

used to determine if an employee has worked overtime hours.  *See* 29 C.F.R.

778.102 ("If no more than the maximum number of hours prescribed in the Act are

<u>actually worked</u> in the workweek, overtime compensation … need not be paid.")

(emphasis added).  Overtime compensation is due only if the employee in fact

worked overtime hours; it is not due if the employee could have worked overtime

hours.

 The actual hours worked is also crucial because any overtime compensation

due is calculated at one and one-half times an employee's regular rate of pay for

any overtime hours worked, and the regular rate is determined by dividing the total

payments to the employee by the total number of hours actually worked in a

workweek.  *See* 29 U.S.C. 207(a); 29 C.F.R. 778.109.  The regular rate cannot be

calculated using the hours that an employee could have worked, was supposed to

have worked, or agreed to work.  *See, e.g.*, *Walling v. Youngerman-Reynolds*

*Hardwood Co.*, 325 U.S. 419, 425 (1945) (the regular rate "is unaffected by any

designation of a contrary 'regular rate' in the wage contracts"); *Albers v. Bd. of*

*Cty. Comm'rs.*, 771 F.3d 697, 705 (10th Cir. 2014) ("Though terms of an

employment contract are relevant to a regular rates inquiry, they are not

controlling, because the regular rate is an actual fact, rather than an arbitrary label

43

chosen by the parties.") (internal quotation marks omitted); *Brennan v. Valley Towing Co.*, 515 F.2d 100, 105 (9th Cir. 1975) ("While appellees' position is imaginative, it ignores the established principle that the regular rate is <u>not a hypothetical construction but an actual fact</u>.") (internal quotation marks omitted) (emphasis added).

Several other regulations in Part 785 similarly make clear that the actual hours worked is key in paying employees in compliance with the FLSA. WHD's regulation regarding rounding of hours provides that an employer's practice of rounding employees' starting and stopping times is acceptable only if it does not result "in failure to compensate the employees properly for all <u>the time they have actually worked</u>." 29 C.F.R. 785.48 (emphasis added). WHD's regulation regarding de minimis amounts of time permits an employer not to include in compensable hours worked periods of time that are insubstantial in the aggregate and that the employer cannot, as a practical matter, record for payroll purposes, but otherwise requires the employer to count periods of time, "however small," as hours worked if it is feasible for the employer to record the time. 29 C.F.R. 785.47. The existence of this regulation, accepted by courts (*see, e.g.*, *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 374 (4th Cir. 2011); *De Asencio*, 500 F.3d at 374; *see also Sandifer*, 134 S. Ct. at 880 n.8), reflects the principle that employers must pay employees for actual hours worked, not hours that could have been

worked. And here, of course, Progressive recorded all the amounts of time that telemarketers were not logged on and not getting paid during short breaks.

In sum, actual facts determine compensable hours worked, not hypothetical or potential facts. *Cf. Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (employers are required to keep records of actual hours worked and if they fail to do so, employees have a lesser burden of proof that may ultimately result in a reasonable approximation of damages). The amount of time that an employee could have taken on break cannot be the basis for determining whether a rest break should count as compensable hours worked. The Secretary is aware of no authority holding that a compensable short break under the FLSA can be deemed non-compensable simply because the employee could have taken a longer (non-compensable) break.

5. Courts have consistently deemed short breaks to be compensable hours worked irrespective of the fact that employees are free to do what they want during the breaks and are not required to remain on the premises. *See, e.g.*, *Aeromotive Metal Prods.*, 312 F.2d at 729 (fifteen-minute breaks in which employees "were free" to spend the break "in such activities as they might desire" were compensable); *Greinetz*, 235 F.2d at 623 (fifteen-minute rest breaks during which employees relaxed with coffee or a soda and could "in theory" have left the premises but did not do so were compensable); *Waldbaum*, 1992 WL 314898, at *2

(rest breaks in which employees made personal telephone calls and smoked cigarettes were compensable); *Brock v. Claridge Hotel & Casino*, 664 F. Supp. 899, 906 (D.N.J. 1987) (rest breaks in which employees visited the employee cafeteria, played pinball, relaxed, or did whatever they wanted were compensable). As WHD stated in its August 13, 1964 Opinion Letter, "[t]he way in which the employee utilizes his time during the rest periods … is irrelevant[.]" JA-912.  In sum, the Secretary is not aware of any court that has concluded that a short rest break is non-compensable because the employee can decide what to do during the short breaks, such as making personal telephone calls.  On the contrary, short rest breaks for which employees must be compensated "are commonplace and sensible in any working environment."  *Waldbaum*, 1992 WL 314898, at *2.[21]

## II.    THE DISTRICT COURT PROPERLY AWARDED LIQUIDATED DAMAGES

1.  When an employer violates the minimum wage provision of the FLSA, it is liable for both the payment of unpaid wages and an additional equal amount of liquidated damages.  *See* 29 U.S.C. 216(b); *Cooper Elec. Supply*, 940 F.2d at 907.  Liquidated damages are compensatory, not punitive, because they "compensate employees for the losses they may have suffered by reason of not receiving their

---

[21] While the Secretary believes that this Court should affirm the district court's conclusion that section 785.18 presents a reasonable bright-line rule, if the Court does not agree that it is proper to do so, it should remand the case to the district court for it to rule in the first instance on the facts and circumstances present here and whether the breaks predominantly benefit the employer or employee.

proper wages at the time they were due." *Martin v. Selker Bros.*, 949 F.2d 1286,

1299 (3d Cir. 1991).

To avoid mandatory liability for liquidated damages, an employer must

show that it acted in good faith and that it had reasonable grounds for believing

that it was not violating the Act. *See* 29 U.S.C. 260; *Selker Bros.*, 949 F.2d at

1299.  Thus, the employer bears the "plain and substantial" burden of proving both

good faith and reasonable belief. *Williams v. Tri-Cty. Growers, Inc.*, 747 F.2d 121,

129 (3d Cir. 1984) (emphasis in original).  The good faith requirement is "a

subjective one that requires that the employer have an honest intention to ascertain

and follow the dictates of the Act." *Cooper Elec. Supply*, 940 F.2d at 907 (internal

quotation marks omitted).  The reasonableness requirement is an objective

standard. *See id.* at 907-08.

An employer's burden of proof is "a difficult one to meet." *Cooper Elec.

Supply*, 940 F.2d at 908 (internal quotation marks omitted).  "If the employer fails

to carry its burden …, the award of liquidated damages is mandatory." *Selker

Bros.*, 949 F.2d at 1299 (emphasis added); *see Marshall v. Brunner*, 668 F.2d 748,

753 (3d Cir. 1982) (district court has discretion to lessen the amount of or not

award any liquidated damages "if, and only if" the employer meets its burden)

(emphasis added).  Thus, it is well-established in this circuit that liquidated

damages are the norm, single damages the exception. *See Cooper Elec. Supply*, 940 F.2d at 908.

2. The district court's conclusion that Progressive failed to meet its substantial burden is well supported by the facts in the record. Apart from the evidence that Progressive's CEO Edward Satell sought legal counsel on this issue, the evidence Progressive put forth below, JA-31, and puts forth here, Br. 49-50, was that Mr. Satell looked at the Department's website, reviewed the FLSA statute and regulations, and read cases. Progressive asserts that these actions by Mr. Satell are sufficient to show good faith. Br. 49-50. However, the district court recited these same facts. JA-31. They did not persuade the district court that Mr. Satell acted in good faith to comply with the FLSA. Because there are notable deficiencies, discussed below, in Mr. Satell's testimony regarding his review of these resources, and because a fair reading of the applicable regulation and WHD guidance would have informed him that rest breaks of twenty minutes or less are compensable, the court had good reason not to have been persuaded.

First, as to the Department's website, Mr. Satell testified that he looked at the website in 2009 when considering whether to implement a non-compensable break policy. JA-606, 623. He did not testify, however, that he learned or saw anything on the website that convinced him that it was legal not to compensate telemarketers for short rest breaks (nor could he have since there is no indication

that the website contained such information).  Moreover, contrary to Progressive's assertion, Br. 50, Mr. Satell did not testify that he saw anything on the website about flexibility in the workplace, let alone anything about flexibility that would relieve him of the obligation to pay for short rest breaks.  JA-606, 618-20.

Second, as to the FLSA statute and its regulations, Mr. Satell did not specify what the regulations generally said or which regulations he read that formed the basis for his conclusion that he did not need to compensate employees for short rest breaks.  But the regulation at 29 C.F.R. 785.18 is directly on point and states that short rest breaks <u>must be</u> counted as hours worked.  Mr. Satell testified that he was "vaguely aware" of this regulation, JA-618, but did not explain why he believed that it did not apply to him.

Third, as to the cases he read, Mr. Satell testified that in most situations the compensability of short rest breaks were determined on a case-by-case basis, and that he found one supporting case dealing with flex hours (though he did not name the case).  JA-618-20.  He also testified that he found the law "very confusing[.]" JA-618-19.  The results of his research, combined with his statement that he found the law very confusing, do not show good faith, especially in light of the cases that cite and apply the regulation at section 785.18.  *See McGuire v. Hillsborough Cty.*, 511 F. Supp. 2d 1211, 1216 (M.D. Fla. 2007) (concluding that the employer's

reliance on two district court cases did not show good faith where those cases were distinguishable).

Given these problems with Mr. Satell's assertions that he concluded on his own, based on his review of the WHD website, the FLSA statute and regulations, and cases, that Progressive's break policy was lawful, the district court's conclusion that Progressive had not met its burden of showing good faith is well supported by the evidence.[22]

3.  The cases that Progressive relies on in its brief to show that it acted in good faith, Br. 48-49, which are largely the same cases that it cited to the district court, are all distinguishable.  In *Grant v. Shaw Grp., Inc.*, No. 08-350, 2012 WL 124399 (E.D. Tenn. Jan. 17, 2012), the issue involved a fact-intensive inquiry into

---

[22] Moreover, though the court did not reach the issue of whether Progressive satisfied the reasonable grounds requirement because the lack of a showing of good faith itself supported an award of liquidated damages, Progressive did not have reasonable grounds to believe that it was complying with the FLSA when it did not compensate employees for short rest breaks.  In light of Mr. Satell's statement that he found the law "very confusing," despite there being a regulation directly on point requiring employers to compensate employees for short rest breaks and the fact that the majority of cases reach this same conclusion, it was not objectively reasonable for Mr. Satell to have concluded that Progressive did not need to pay its telemarketers for their short rest breaks.  The instant case stands in stark contrast to *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir. 1988), where this Court concluded that an employer's belief may be reasonable where the regulation was ambiguous, the government's position had been inconsistent, and the question was very close.  Further, to the extent that Mr. Satell concluded from his review of cases that the compensability of short rest breaks was a case-by-case determination, a reasonable employer would have taken further affirmative steps to ensure that it was complying with the FLSA.

the exempt status of an employee under the FLSA. The employer's human resources director had taken classes covering the FLSA and its regulations and regularly classified employees as exempt or non-exempt as part of her job duties. *See id.* at *3. To make an exemption determination, she regularly reviewed the employee's job description and duties and compared them to the FLSA regulations. *See id.* at *3-4. The district court concluded that these actions showed the employer's good faith and reasonableness. *See id.* at *13. In *Huggins v. United States*, No. 95-285, 2005 WL 6112625, at *5, *20-22 (Fed. Cl. Aug. 16, 2005), which similarly involved the issue of exempt status, the court concluded that the employer-agency had met its burden because numerous agency human resource officials reviewed the job description and duties, including soliciting input from the plaintiffs themselves, and consulted the statute and regulations as well as secondary sources routinely used by labor-relations professions. Unlike the issue of exempt status, which often involves a fact-intensive comparison of regulations outlining exempt duties with a particular employee's job duties, the issue here involves a regulation that states in plain, simple language that short rest breaks "must be counted as hours worked." 29 C.F.R. 785.18.

*Nelson v. Alabama Institute for Deaf & Blind*, 896 F. Supp. 1108 (N.D. Ala. 1995), is equally distinguishable. Shortly after the Supreme Court ruled in 1987 that the FLSA applies to state and local government employers, the personnel

director of the state-entity employer carefully reviewed the job positions at issue, the FLSA, regulations, and opinion letters, attended FLSA seminars, and also arranged to meet with a WHD specialist who assured her that the state-entity's compensation plan complied with the FLSA. *See id.* at 1111, 1115. The court concluded that these actions satisfied both the good faith and reasonableness requirements to avoid liquidated damages. *See id.* at 1115. Unlike the individual in *Nelson*, Mr. Satell conceded that he did not recall attempting to contact anyone in WHD or the Department to inquiry about whether Progressive's break policy was lawful. JA-623-24.

In *Cobb v. Contract Transportation, Inc.*, No. 04-305, 2007 WL 1810482, at *2 (E.D. Ky. June 21, 2007), the court concluded that the employer showed good faith and reasonableness not only because it reviewed the statute and regulations and concluded that the employee had not met the statutory eligibility requirements but also because the issue involving a successor-in-interest was one of first impression under the statute. Here, by contrast, the law was well-established based on a regulation that is directly on point. Moreover, the regulation has been in place since 1961. As discussed above, the vast majority of cases have concluded that short rest breaks are compensable hours worked.[23] Thus, in all of the cases relied

---

[23] Even if some of those cases suggest that a facts and circumstances analysis is proper, they nonetheless ultimately concluded either that the breaks were compensable or that it required a factual determination.

on by Progressive, the employer had done considerably more than Mr. Satell did here.

4. Progressive maintains that the district court in fact found that Progressive had acted in good faith and with reasonable grounds based on Mr. Satell's actions of consulting the Department's website, reading the FLSA and its regulations, and reading cases, but that the court then erroneously disregarded that finding because of Progressive's refusal to disclose the legal advice it received. Br. 47-51. Progressive mischaracterizes the court's decision.

As an initial matter, the district court never concluded that Mr. Satell's actions constituted good faith. Rather, the court stated that Progressive had cited a number of cases (the same cases discussed above) and had argued that courts found actions similar to Mr. Satell's to be sufficient to show good faith. JA-31. Summarizing Progressive's evidence and argument, however, does not constitute a finding that Mr. Satell acted in good faith and with reasonable grounds.

Furthermore, the district court did not err in concluding that Progressive's decision not to disclose the substance of the legal advice that Progressive received weighed against Progressive's showing of good faith. It was in the context of summarizing the evidence that Progressive put forth regarding Mr. Satell's actions (independent of his consulting legal counsel) that the district court concluded that, in light of Progressive's failure to disclose the substance of the legal advice that he

53

received, Progressive could not satisfy its good faith burden.  JA-31-32.  As noted

above, Mr. Satell testified that he found the law "very confusing" and for that

reason he "consulted with attorneys."  JA-618-19.  This is why the district court

found it significant that he consulted legal counsel.

Without knowing the substance of the legal advice Mr. Satell received, the

district court reasonably noted, it was impossible to know whether he received

contrary legal advice and disregarded it or whether he received advice indicating

that Progressive's break policy complied with the FLSA.  JA-32.  The court did not

conclude, even implicitly, that the legal advice Mr. Satell received was contrary to

his actions; it merely noted that it was a possibility.  Thus, the court did not draw a

negative inference from Progressive's assertion of its attorney-client privilege.

Rather, the court concluded that there was no basis to infer that Mr. Satell had

acted in good faith.

The district court's approach is analogous to that employed by the Seventh

Circuit in *Bankston v. State of Illinois*, 60 F.3d 1249 (7th Cir. 1995).  The court

there affirmed an award of liquidated damages where a memorandum from an

employer's legal department showed that the employer was at least aware that the

plaintiffs may not have been exempt under the FLSA and the employer's director

indicated that he spoke with the employer's attorneys but "refused to disclose" the

substance of his conversations.  *Id.* at 1254-55.  The Seventh Circuit concluded

that the employer "failed to show how [it] took steps to be more certain of plaintiffs' status.  The lack of such an inquiry indicates a lack of good faith in complying with the responsibilities imposed by the FLSA."  *Id.* at 1255.  As in *Bankston*, the fact that Mr. Satell was aware, albeit "vaguely," of the regulation squarely addressing the issue of the compensability of short rest breaks, and his statement that he found the law confusing, combined with his decision not to disclose the advice his attorneys gave him on the issue, support the district court's conclusion here that Progressive failed to satisfy its good faith burden.  *Cf. Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272–73 (11th Cir. 2008) (affirming the district court's award of liquidated damages and rejecting employer's argument that district court had read a documentary evidence or Department consultation requirement into the good faith burden; rather, the district court merely reasoned that the absence of such evidence weighed against a finding of good faith and reasonableness).

5.  Progressive devotes the bulk of its argument to a discussion of the importance of the attorney-client privilege, Br. 51-54.  The Secretary readily acknowledges the importance of the attorney-client privilege.  Apart from its importance, however, Progressive was and is attempting to avoid the mandatory imposition of liquidated damages, which it can do only if it meets its substantial burden to show good faith and reasonableness.  *See Sanders v. Elephant Butte*

55

*Irrigation Dist.*, 112 F.3d 468, 471 (10th Cir. 1997) (no good faith in part because employer changed its compensation practices "based upon its own interpretation of the statute without obtaining a legal opinion from a lawyer or consulting those who administer the FLSA"); *cf. Garcia v. Allsup's Convenience Stores, Inc.*, 167 F. Supp. 2d 1308, 1316 (D.N.M. 2001) (good faith and reasonableness established where employer consulted former WHD official and attorney and relied on their advice); *Quirk v. Balt. Cty.*, 895 F. Supp. 773, 788 (D. Md. 1995) (good faith and reasonableness requirements met whether the employer "consulted legal counsel and personnel specialists in neighboring jurisdictions").  The district court below reasonably concluded that the absence of evidence of the legal advice that Mr. Satell received weighed against a finding that Progressive had met its burden to show that it acted in good faith.  Thus, the district court's award of liquidated damages here more than satisfies this Court's deferential standard of review.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's

decision in all respects.


Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation


s/ Rachel Goldberg_____
RACHEL GOLDBERG
Senior Attorney
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
(202) 693-5555

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(5) and (7).  This document is proportionally spaced in 14-point font, and contains 13,805 words, based on the word count provided by my word processor and Microsoft software.

## CERTIFICATE OF DIGITAL AND HARD COPY SUBMISSIONS

Counsel hereby certifies as follows:

1.  All required privacy redactions have been made pursuant to 3d Cir. L.A.R. 25.3, and

2.  The seven (7) hard copies of the Brief for the Secretary of Labor being submitted to the Court are exact copies of the version submitted electronically via the Court's CM/ECF system.

## CERTIFICATE OF VIRUS CHECK

Counsel hereby certifies, pursuant to 3d Cir. L.A.R. 31.1(c), that a virus check, using McAfee Security VirusScan and AntiSpyware Enterprise 8.8, was performed on this file, and no viruses were detected.


Dated:  November 28, 2016               s/ Rachel Goldberg_____
                                         RACHEL GOLDBERG
                                         Senior Attorney
                                         U.S. Department of Labor
                                         District of Columbia Bar, No. 53351

## CERTIFICATE OF BAR MEMBERSHIP

The undersigned counsel certifies that she is a member in good standing of the District of Columbia Bar, No. 53351.  As an attorney representing an agency of the United States, she is not required to be a member of the bar of this Court.  *See* 3d Cir. L.A.R. 28.3, Committee Comments.

Dated:  November 28, 2016

s/ Rachel Goldberg
Rachel Goldberg
Senior Attorney
U.S. Department of Labor
District of Columbia Bar, No. 53351

CERTIFICATE OF SERVICE AND ECF COMPLIANCE

I hereby certify that on November 28th, 2016, a true and correct copy of the foregoing Brief for the Secretary of Labor was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system, and that service on all counsel of record will be accomplished by this system.

s/ Rachel Goldberg_____
Rachel Goldberg
Senior Attorney
U.S. Department of Labor
District of Columbia Bar, No. 53351