No. 16-2685

𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
𝖋𝖔𝖗 𝖙𝖍𝖊 𝕿𝖍𝖎𝖗𝖉 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

**THOMAS E. PEREZ, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR**

*Appellee*,

v.

**AMERICAN FUTURE SYSTEMS, INC. d/b/a/
PROGRESSIVE BUSINESS PUBLICATIONS, a
corporation, and EDWARD SATELL, individually and as
President of the above referenced corporation**

*Appellants*.

On Appeal from an Order Granting a Motion for Summary
Judgment in the United States District Court for the Eastern
District of Pennsylvania, No. 2:12-cv-06171

**REPLY BRIEF OF APPELLANTS**

Alfred W. Putnam, Jr.
(PA Bar No. 28621)
D. Alicia Hickok
(PA Bar No. 87604)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
215-988-2700
Alfred.putnam@dbr.com
Alicia.hickok@dbr.com

Sarah E. Bouchard
(PA Bar No. 77088)
MORGAN, LEWIS & BOCKIUS
1701 Market Street
Philadelphia, PA 19103
215-963-5000
Sarah.bouchard@morganlewis.com

Lincoln O. Bisbee
(DC Bar No. 979358)
MORGAN, LEWIS & BOCKIUS
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-739-3000
Lincoln.bisbee@morganlewis.com

# TABLE OF CONTENTS

**Page**

I.    The Department Completely Distorts Progressive's Flexible
      Workplace and the Real-Life Benefits Progressive Employees Derive
      from Its Flexible Break Policy...........................................................................1

      A.    The Department's Picture of Progressive's Workplace Is
            Inaccurate and Not Supported by the Record .....................................2

      B.    The Department Misrepresents Progressive's Motivations and
            Actions in Adopting Its Flexible Break Policy ...................................5

      C.    The Department's Distorted View of Progressive's Workplace
            Disserves the Workers It Claims to Protect .........................................5

II.   The FLSA Does Not Apply Here, But If It Did, No Bright-Line Rule
      Would Apply .....................................................................................................8

      A.    The Periods at Issue in this Case Are Not "Rest Periods" and
            Are Not Covered by the FLSA.............................................................9

      B.    The Department's Reliance on the Continuous Workday Rule Is
            Based on the Same False Premise That Employees Do Not
            Control When to Work and When Not to Work ...............................11

      C.    The Department's Arguments for a Bright-Line Rule That All
            Rest Periods Are Compensable Ignore Governing Case Law
            and Historical Interpretations ...........................................................12

            1.    The Specific Case Cited in 29 C.F.R. § 785.18 Requires a
                  Fact-Based Predominant Benefit Analysis ..............................13

            2.    The Department Is Not Entitled to Deference for Its
                  Currently Favored Construction of 29 C.F.R. § 785.18,
                  and Congress Has Never Ratified This Rigid
                  Interpretation.........................................................................14

            3.    Every Other Regulation in Part 785 Uses a Predominant
                  Benefit Test ............................................................................19

III.  Contrary to the Department's Arguments, the District Court's
      Liquidated Damages Award Is Based Solely on Progressive's
      Asserting Attorney-Client Privilege ............................................................21

IV.   Conclusion ......................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Armour & Co. v. Wantock*,
   323 U.S. 126 (1944)..........................................................................15, 16, 17, 19

*Babcock v. Butler Cnty*,
   806 F.3d 153 (3d Cir. 2015) ...............................................................19, 20

*Bankston v. State of Illinois*,
   60 F.3d 1249 (7th Cir. 1995) .............................................................24

*Baumhover v. N. Bend Med. Ctr., Inc.*,
   No. 07-647, 2008 WL 2874831 (D. Or. July 22, 2008) ......................13

*Brock v. The Claridge Hotel and Casino*,
   664 F. Supp. 899 (D.N.J. 1986) .........................................................14

*Chambers v. Sears Roebuck & Co.*,
   428 F. App'x 400 (5th Cir. 2011) .......................................................11

*Donovan v. Litvin*,
   1985 U.S. Dist. LEXIS 17047 (E.D. Pa. Apr. 8, 1985)......................14

*Garcia v. Tyson Foods, Inc.*,
   766 F. Supp. 2d 1167 (D. Kan. 2011)..................................................14

*Hagans v. Commissioner of Social Security*,
   694 F.3d 287 (3d Cir. 2012) ...............................................14, 15, 16, 18

*Kuebel v. Black & Decker, Inc.*,
   643 F.3d 352 (2d Cir. 2011) ...............................................................11

*Mitchell v. Greinetz*,
   235 F.2d 621 (10th Cir. 1956) ............................................13, 18, 22

*Mitchell v. Turner*,
   286 F.2d 104 (5th Cir. 1960) .............................................................13

*Rutti v. Lojack Corp.*,
   596 F.3d 1046 (9th Cir. 2010) ...........................................................11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

29 C.F.R. Part 785 ....................................................................................16, 17, 19

29 C.F.R. § 531.57 ...............................................................................................20

29 C.F.R. § 785.2 .................................................................................................16

29 C.F.R. § 785.18 ........................................................................................passim

29 C.F.R. § 785.19 ...............................................................................................19

The Department of Labor's (the "Department") brief, where it even addresses Progressive's arguments, is built upon factual misrepresentations, misstatements of law, and a fundamental misunderstanding about the nature of this case. This Reply addresses four critical points that show why the District Court's ruling should be reversed and judgment entered for Progressive.

## I. The Department Completely Distorts Progressive's Flexible Workplace and the Real-Life Benefits Progressive Employees Derive from Its Flexible Break Policy

In an effort to fit this case into its pre-ordained narrative, the Department paints an inaccurate picture of Progressive's workplace and the maximum flexibility policy at issue in this case. That is unfortunate. While the Department may be free to make the arguments it makes, it is not free to distort the record made in the District Court. The fact is that this case did not proceed to a trial in which disputed material "facts" were found in the Department's favor. To the contrary, the parties stipulated to the material facts of this case and most of the remaining record is undisputed. This is why the case can—and should—be decided on the basis of cross-motions for summary judgment.

As a result of the parties' stipulations and other submissions, a detailed record exists on what Progressive's break policy was and is, why it was adopted, and whom it benefitted. That record is accurately summarized at pages 4 to 14 of Progressive's opening brief but it is not accurately reflected in the Department's

1

brief or in the *amicus curiae* brief filed in support of the ideological position that the Department has adopted.  Accordingly, some corrections are in order.

### A.    The Department's Picture of Progressive's Workplace Is Inaccurate and Not Supported by the Record

In an attempt to shoehorn the unique facts of this case into an ill-fitting and anachronistic legal theory, the Department argues that "Progressive's pay structure and operations indirectly limited the number and length of breaks that telemarketers could take."  (Appellee Brief ("DOL Br.") 7).  The only purported limitations to which the Department points, however, all relate to a supposed "minimum hours" requirement for each two-week pay period.  (*Id.* at 8-9).  But the Department stipulated—and the record clearly shows—that representatives *themselves* project how many hours they intend to work over a two-week period, and it can be as low as twenty hours per week.  JA-40 (Stipulated Fact 25); JA-201-02; JA-919.  Even more to the point, the undisputed data in the record plainly show that the requirement does not impinge on representatives' flexibility to determine when to begin their work day, when to end their work day, and when to work in between.  (Progressive Br. 25).

The Department also claims that Progressive managers used the minimum hours requirement to control representatives by "encourag[ing]" representatives to arrive at specific times or imposing fixed schedules.  (DOL Br. 8-9).  Again, that is simply not true.  Encouraging representatives to reach their minimum hours target

2

or requesting that representatives, as a common courtesy, inform managers when they *choose* not to come in is a far cry from controlling representatives' working hours. And the record flatly contradicts the assertion that Progressive ever forced representatives to work at times other than their choosing. JA-464 (McIlwain Deposition); JA-519-20 (Pirock Deposition); JA-677-78 (Stotler Deposition).

It is undisputed that Progressive's policy, by its terms, gives representatives absolute freedom to decide when to work—and when not to work—based on their individual needs and preferences. JA-40 (Stipulated Fact 28). The extensive (and undisputed) log-on/log-off data collected in this case confirm that representatives enjoy autonomy and flexibility over all aspects of their work schedule, including breaks. Although the Department comments about what the "average" representatives does on a given day (DOL Br. 6), it offers no response to the undisputed data showing wide variation in: (1) the times representatives begin their work days, JA-1047 (showing many representatives begin working after 10:00 a.m. and some begin in the afternoon); (2) the times representatives take "breaks," *id.* (showing no single hour of the day in which twenty percent of breaks begin); (3) the number of breaks representatives take, JA-848 (noting the "large variation in the number of breaks taken in a day even when the number of hours worked is held constant"); (4) the times representatives end their work days, JA-1047 (showing end times broadly distributed between 1 p.m. and 5 p.m.); and (5) the

average length of representatives' work days, JA-848-49 (highlighting the

substantial variation in daily hours worked).  (*See also* Progressive Br. 25).

The Department tries to obscure these undisputed facts by arguing that

representatives average five breaks per day, which, it says, is typical of any

workplace.  (DOL Br. 6, 38 n. 19).[1]  But the "typical" workplace has employees

who work eight hours, with a fixed fifteen-minute rest break mid-morning, a fixed

fifteen-minute rest break mid-afternoon, and a fixed lunch break in between.  That

does not describe Progressive's work environment at all.  Progressive's employees

work, on average, five hours and fifteen minutes per day, and the breaks they take

vary in timing, duration, and purpose.  (Progressive Br. 25).  In short, Progressive

is a unique workplace where representatives enjoy singular flexibility.

Similarly misleading is the Department's claim that "Progressive's expert

conceded that there were limits in terms of flexibility for telemarketers under

Progressive's policies and operating structure."  (DOL Br. 9 (citing JA-336-37)).

In fact, those "limits" are solely that representatives: (1) do not work remotely; and

(2) work only between 8:30 a.m. and 5:00 p.m., which is when the offices are

open.  JA-336-37.  These purported "limits" do not deprive representatives of

---

[1]    Of course, the Department provides no support for its claim that five breaks per day reflects a "typical workplace."

choosing when to start, pause, and stop working within normal office hours.  In

other words, they have nothing to do with any of the issues in this case.[2]

In short, there is no truth to—and no record support for—the Department's

depiction that Progressive either limits employee breaks or prevents employees

from using the flexibility indisputably provided by Progressive's policy.

### B.    The Department Misrepresents Progressive's Motivations and Actions in Adopting Its Flexible Break Policy

The Department also baselessly impugns Progressive's motivations for

adopting its flexible break policy.  There is not a shred of evidence to support the

Department's implication that Progressive implemented the policy to evade the

minimum wage and reduce costs at the expense of its representatives' well-being.

As explained in Progressive's opening brief, the break policy was developed *at*

*representatives' request* and actually *increases* representatives' income.

(Progressive Br. 7-10, 41 n.8).

### C.    The Department's Distorted View of Progressive's Workplace Disserves the Workers It Claims to Protect

The Department ignores the significant personal benefits that representatives

enjoy through their control over when to work and not work.  (Progressive Br. 12-

---

[2]    In misrepresenting the reality of Progressive's workplace, the Department ignores deposition testimony and declarations (from both Progressive's and the Department's witnesses) establishing that representatives have complete freedom concerning the frequency and duration of their "breaks."  (Progressive Br. 9-10, 24).

14).   The Department says it is protecting representatives from their employer, but its paternalistic approach ignores the substantial deleterious effects it imposes on the lives of Progressive's employees.

As the Support Center for Child Advocates highlighted in its *amicus* brief, low-wage workers often have the greatest need for flexibility in order to hold multiple jobs and care for their families.  (Amicus Br. 4-11).  Progressive's policy gives representatives precisely that by letting them control when to work. Moreover, *as the Department's expert conceded*, Progressive's unique model is not feasible if the Department's position prevails.  JA-704.[3]  This would have disastrous real-world consequences for Progressive's employees.  Whereas they now are free to stop working whenever they want, for as long as they want, and for

---

[3]     The *amicus curiae* supporting the Department suggests—without any evidentiary or statistical basis—that "Progressive could easily continue its current break policy while also paying workers for short breaks" (Amicus Br. 8).  That assertion is false.  The Department's own expert's conceded that it would be economically impossible to offer unlimited breaks *and* pay for all breaks of twenty minutes or less.  JA-704.

The *amicus curiae* also wrongly suggests that Progressive is somehow engaged in "wage theft" and is forcing employees to choose between "fair pay" and flexibility.  (Amicus Br. 8).  This is preposterous.  There is no dispute that Progressive pays its employees for all time spent working.  There is also no dispute that the decision whether to take a "break" is left entirely to employees, and that some employees use breaks to do work for family-owned businesses or take shifts for less-flexible second workplaces.  (Progressive Br. 12-14).  Moreover, as discussed further below, the Department's proposed alternative—i.e., permitting only unlimited breaks of over twenty minutes—would actually result in longer periods of uncompensated time.  *See infra* at 7-8.

6

whatever purpose—e.g., to care for a sick child or parent, attend counseling, work a second job, or further their education—the Department's position would force them into the unfortunate predicament faced by many low-wage workers of having to choose between work and personal needs.[4]

The Department retorts that there are many ways employers can provide flexibility to employees (DOL Br. 40) and that Progressive is free to provide unlimited, unpaid breaks longer than twenty minutes. (*Id.* at 3 n.1, 39-40). But when, after the District Court's ruling, Progressive developed a policy *doing precisely that*, the Department informed Progressive—in writing and in direct contradiction of its position before both the District Court and this Court—that some breaks *over twenty minutes* might be compensable. (Supplemental Appendix 55-56). As that action demonstrates, the Department is not advocating flexibility; it is making the flexibility that employees are asking for impracticable.

Moreover, even the solution the Department's advances in its brief—i.e., having an employer solely offer unlimited breaks of more than twenty minutes—is

---

[4]    The *amicus curiae* supporting the Department draws an entirely false dichotomy by arguing that "Progressive's flexibility is not available for most workers" (Amicus Br. at 10). This position is not supported by a shred of evidence, which, no doubt is why the *amicus* does not even attempt to cite to the record. In fact, the record plainly shows that Progressive's employees choose an average workday of five hours, begin and end their days at a wide range of times that are ideal for their individual schedules, and have the flexibility to take as many or few breaks as they desire (and of whatever duration they desire) all with the full support of the company. *See supra* at 3-4. These facts are undisputed in the record, and it is undisputed that they apply to all of Progressive's employees.

far worse for employees than the policy at issue here. It is nonsensical to outlaw a policy that empowers employees to determine both their personal needs and the length of time needed to address those needs and, instead, force an employee to take twenty-one minutes of unpaid time for a call with a child's school that might take only five minutes. Stated differently, it is the Department's supposedly preferred workplace alternative that ultimately deprives workers of paid time simply to satisfy the Department's rigid, formulaic, and outdated approach to the workplace.[5]

Ultimately, all parties and *amici* agree that employees—and particularly low-wage workers—benefit from flexible worktime. Progressive believes that even low-wage employees should be trusted to make decisions for themselves about when and for how long to work. The Department, unfortunately, does not.

## II.    <u>The FLSA Does Not Apply Here, But If It Did, No Bright-Line Rule Would Apply</u>

The entirety of the Department's brief, and the District Court's decision, is founded on the incorrect premise that this is a case about defined short "rest periods" or "rest breaks." That is incorrect. The "breaks" at issue here are completely unrestricted periods of time that Progressive gives to its employees to

---

[5]    Although Progressive has now adopted a policy of disallowing all non-restroom breaks of fewer than twenty minutes and requiring all other breaks to be over twenty minutes (Supplemental Appendix 54), it has done so only in response to the District Court's decision. Progressive would prefer to return to the flexible break policy originally requested by its employees.

use whenever they want and however they want.  The Department fails to explain

how time that is completely under the employees' control can fit within the

Supreme Court's definition of "work."  Critically, Progressive does not instruct its

employees to "rest" at any time or for any duration, and the record is replete with

evidence of representatives doing what is important to them (for as long as they

choose) when they are not working.  Moreover, even if this free time could

somehow be said to constitute "work," the Department and the District Court use

the wrong test to determine whether it must be compensated.

### A.    The Periods at Issue in this Case Are Not "Rest Periods" and Are Not Covered by the FLSA

The Department's brief fails to deal with the fact that representatives' breaks

are not defined "rest periods."  To the contrary, they are unencumbered periods of

time controlled by the representatives themselves.  As such, they fall outside of the

Fair Labor Standards Act ("FLSA" or the "Act") – and certainly outside of the

description in Section 785.18.

The Department and the District Court improperly applied a backward-

looking, bright-line rule that periods of time where representatives *chose* to stop

working for twenty minutes or less are compensable while periods of time where

representatives *chose* to stop working for longer than twenty minutes are not.  By

the Department's own admission, this bright-line rule is premised on rest periods

being limited in duration such that employees cannot use them effectively for their

9

own purposes. (DOL Br. 29 n.17, 34 n.18). The record is clear, however, that this foundational premise for the Department's argument—and the District Court's ruling—has no application in this case.

The Department does not dispute that Progressive's policy allows representatives absolute control over whether a break will last five minutes, fifty minutes, or five hours. JA-40 (Stipulated Fact 28). As explained in Progressive's opening brief, such periods are not "work" under the Supreme Court's definition because: (1) representatives—*not Progressive*—control the length of the work stoppage; and (2) representatives are not required to be on Progressive's premises, on duty, or at a prescribed workplace during the work stoppage. (Progressive Br. 20-28). Nor do they need to be accountable to Progressive during their time off. (*Id.*).

The Department ignores this argument entirely and offers no explanation for how time controlled by representatives to use for however long they desire (and for any end they desire) is "work." Instead, the Department offers only the conclusory assertion that employees' control over whether a break will be shorter or longer than twenty minutes is irrelevant. (DOL Br. 42). According to the Department, if an employee chooses a break that happens to last nineteen minutes, the break must be counted as hours worked even though the break would not be treated as hours worked if it lasted twenty-one minutes. *Id.* The Department's conclusion

10

necessarily depends on the false premise that *employer* defined and controlled "rest periods" are at issue here. When the Court views this case through the proper lens of *employee*-controlled time, it should be clear that such periods are not covered by the FLSA regardless of whether an employee chooses to stop working for a ten-minute phone call to a doctor or a two-hour visit to the doctor's office.

**B.    The Department's Reliance on the Continuous Workday Rule Is Based on the Same False Premise That Employees Do Not Control When to Work and When Not to Work**

The Department tries to get around Progressive's employees' control over their "breaks" by invoking the continuous workday rule. In short, the Department claims that because employee "breaks" happen during the workday, they are compensable. (DOL Br. 19-20). But the continuous workday does not apply where employees are: (1) free to choose when to work; and (2) completely relieved from duty after completing work tasks. *See Chambers v. Sears Roebuck & Co.*, 428 F. App'x 400, 423 (5th Cir. 2011); *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 360 (2d Cir. 2011); *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010). That is the case here. Because representatives work *only* when they choose to work and are completely relieved from duty when they choose not to work, the continuous workday rule is inapplicable.

To view the continuous workday any other way would create a paradigm where the Department is mandating pay for virtually all *non-working*, waking

11

hours during the day whether or not an employee controls what he or she does during that *non-working* time.  Under this view of the world, an employee who works for one hour, takes five hours off, and works for two more hours must be paid for eight hours.  That does not promote flexibility because no employer could sustain paying for twice the work an employee does when competing against other employers that force employees to work defined hours with fixed and limited breaks. [6]

### C.    The Department's Arguments for a Bright-Line Rule That All Rest Periods Are Compensable Ignore Governing Case Law and Historical Interpretations

If, despite representatives' undisputed and unfettered control over "breaks," the Court were to determine that those periods are covered by the FLSA and subject to the rest period regulation, the Department's arguments for application of a bright-line rule—and the District Court's reliance on those arguments—would still be misplaced.  The Department's assertion that the facts and circumstances of a case are irrelevant is especially inappropriate here, in an admitted case of first impression over breaks controlled entirely by employees.

---

[6]    The Department's position on the continuous workday rule is also in direct conflict with its simultaneous contention that Progressive could lawfully offer unlimited, unpaid breaks of more than twenty minutes.  This contradiction is yet further proof that the Department's true aim is to win this case by whatever means necessary and then continue incrementally regulating the workplace until all time is subject to government regulation.

### 1.    The Specific Case Cited in 29 C.F.R. § 785.18 Requires a Fact-Based Predominant Benefit Analysis

The Department attempts to explain away the citation to *Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956), in the rest period regulation by claiming that *Greinetz* appears there because it affirmed the Administrator's bright-line interpretation that rest periods of twenty minutes or less are *per se* compensable. (DOL Br. 17). This flips *Greinetz* on its head. Contrary to the District Court's ruling and the Department's current position, *Greinetz* could not be clearer that "*no hard or fast rule can be laid down in these cases and each must be decided upon its own facts and circumstances.*" 235 F.2d at 625 (emphasis added)).

As the Department concedes, *Greinetz* hardly stands alone. (DOL Br. 29) (conceding that three Courts of Appeals have applied facts and circumstances/predominant benefit test); *Aeromotive Metal Prods., Inc.*, 312 F.2d 728, 729 (9th Cir. 1963) ("it seems to us clear that in each case [*Greinetz* and *Turner*] the Court felt that the trial court should consider all of the facts in determining whether the rest period was predominantly for the benefit of the employer."); *Mitchell v. Turner*, 286 F.2d 104, 105-06 (5th Cir. 1960) (test for determining compensability of fifteen-minute breaks "is whether the 'idle time' is 'predominantly for the employer's benefit or for the employee's.'"); *see also Baumhover v. N. Bend Med. Ctr., Inc.*, No. 07-647, 2008 WL 2874831, at *3 n.3 (D. Or. July 22, 2008) ("the proper test of whether a break or meal period is

13

excepted from FLSA overtime provisions focuses on whether the period was used

predominantly or primarily for benefit of employer or for benefit of the

employee."); *Garcia v. Tyson Foods, Inc.*, 766 F. Supp. 2d 1167, 1183 (D. Kan.

2011) (applying facts and circumstances/predominant benefit test); *Brock v. The*

*Claridge Hotel and Casino*, 664 F. Supp. 899, 907-08 (D.N.J. 1986) (same);

*Donovan v. Litvin*, 1985 U.S. Dist. LEXIS 17047, at *20 (E.D. Pa. Apr. 8, 1985)

(same).

To be sure, some courts (although not this Court) have summarily found rest

periods to predominantly benefit employers.  (DOL Br. 24-27).  But, as the

Department concedes, those cases are based on the premise that breaks of *defined*

*and limited* duration *by definition* do not allow employees to use the time

effectively for their own purposes.  (*Id.* at 24-27, 29 n.17, 34 n.18).  Those cases

have no parallel here.  Because none of the Department's cases involves employee

flexibility and control over break length and timing, the outcomes offer no

guidance on the compensability of breaks under Progressive's uniquely flexible

policy.

**2.**  **The Department Is Not Entitled to Deference for Its Currently Favored Construction of 29 C.F.R. § 785.18, and Congress Has Never Ratified This Rigid Interpretation**

The Department paraphrases the factors listed in *Hagans v. Commissioner of*

*Social Security*, 694 F.3d 287, 304-05 (3d Cir. 2012), for determining the level of

14

*Skidmore* deference its interpretations are due.  Of course, Progressive cited *Hagans* in *its* brief for the proposition that reduced deference may be owed to an interpretation that is inconsistent with the Department's prior positions. (Progressive Br. 45).  The *Hagans* court also observed that brevity and "underdeveloped reasoning" in a given interpretation "counsel toward a lower level of deference," 694 F.3d at 305; and that "[t]he most important considerations are whether the agency's interpretation is consistent and contemporaneous with other pronouncements of the agency and whether it is reasonable given the language and purpose of the Act."  *Id*. at 304.

Here, the Department's current interpretation of Section 785.18 is inconsistent with: (1) the language and purpose of the FLSA; (2) how courts evaluate rest periods; (3) the Department's previous stance on rest periods; and (4) other Department interpretations.  If the Department really meant to establish a "bright-line rule" that all breaks of twenty minutes or less must always be compensated, it did not say so, and none of the other factors arguing for deference support such a rule.  Instead, all the factors that this Court looks to in determining the weight to give the Department's "bright-line rule" show that the interpretation in this case is entitled to no weight at all.

As discussed throughout this briefing, the Department's pronouncements here are *not* consistent with how the Supreme Court defined "work" in *Armour—*

15

which governs the FLSA itself—and its own opinion letters from the date of the guideline forward. *Armour & Co. v. Wantock*, 323 U.S. 126 (1944). The purpose of the FLSA is to regulate compensation *for work* – not, as the Department would have it, to govern *non-work* time controlled by employees. It is no wonder then that the Department ignores the central language in *Hagans*—and the settled construction of the FLSA—and relies on what it claims to be the FLSA's remedial purpose. (DOL Br. at 37-38).[7] But an invocation of remedial purpose, no matter how often repeated, cannot excuse direct conflict with both the FLSA's purpose and longstanding case law.

Moreover, the Department does not address at all what other courts have found a compelling reason to apply little-to-no deference to 29 C.F.R. Part 785. As discussed in Progressive's opening brief, when the Department codified several interpretive guidelines in 1961, it stated that: "The ultimate decisions on interpretations of the act are made by the courts." 29 C.F.R. § 785.2. In fact, the guidelines were described as simply announcing the "positions [the Department] will take in the enforcement of the Act." *Id.* The Department's brief never

---

[7]    The Department's repeated reference to "bathroom breaks" and "coffee breaks" demonstrates the duplicity of its legal position. The Department speaks out of one side of its mouth when it tells the Court to look at what it hypothesizes the purpose of the breaks to be in determining whether compensation would be compatible with the statute, but speaks out of the other when it tells the Court to ignore the purpose of the breaks in determining whether they should be considered to be work at all.

addresses—or so much as mentions—the significance of this provision that governs all of the subsequent guidelines, including Section 785.18.  Because the Department's wooden interpretation of Section 785.18 conflicts with the well-established facts-and-circumstances test used by courts, it warrants no deference. *See supra* at 13-14.

The Department's current interpretation also departs from its prior positions. The mere fact that the Department previously determined in select (and now cherry-picked) circumstances that breaks of a definite and limited length were compensable does not support the Department's position that facts and circumstances are now, and have always been, irrelevant.  (DOL Br. 18-19, 21-23). Several opinion letters show otherwise.  Opinion letters from January 25, 1995 (JA-1361) and August 13, 1964 (JA-1351) clearly state that the compensability of breaks "must be decided in light of the particular facts and circumstances involved," including whether employees can utilize the time for their own purposes.  In contrast to its position in this case, the Department's past approach confirms that the facts and circumstances of who predominantly benefits from an employer's break policy—employer or employees—does indeed matter greatly.

Likewise, the Department's current view of its rest period regulation is *not* consistent with other agency guidelines in Part 785 – all of which apply the flexible, predominant benefit test mandated by the Supreme Court in *Armour*.  *See*

17

*infra* 19-20.  This "important consideration" provides yet another reason why the Court should grant no deference to the Department's interpretation of Section 785.18.  *See Hagans*, 694 F.3d at 304.

In an attempt to avoid the deference analysis altogether, the Department claims that Congress has ratified its (erroneous) bright-line interpretation in two distinct ways.  (DOL Br. 23-24).  Both claims are wrong.  First, the unequivocal holding in *Greinetz*—that each case turns on its own unique facts and the question of whether an employer or its employees benefit from a given break policy— makes clear that the Department's 1940 interpretation was viewed as consistent with a facts and circumstances/predominant benefit test when Congress amended the FLSA in 1949.  *See supra* at 13.  Second, the Affordable Care Act's provision that breaks for female employees to express breastmilk can be non-compensable does not demand a bright-line interpretation of Section 785.18 to avoid statutory surplusage.  The breastmilk provision is equally harmonious with a facts and circumstances test where Congress decided, *under those circumstances*, that breaks to express breastmilk are non-compensable because they predominantly benefit employees.

18

**3.    Every Other Regulation in Part 785 Uses a Predominant Benefit Test.  The Court Should Apply That Same Test Here and Enter Judgment for Progressive and Mr. Satell**

The Department offers no response to the argument that it makes no sense to evaluate the compensability of rest periods mechanically when every other regulation in Part 785 uses a flexible, predominant benefit test.  (Progressive Br. 33-40).  The question of compensability for any non-exertive period is ultimately whether employees are giving up time for their employers' benefit or *vice versa*. By the Department's own admission, that is the approach used for all of the other regulations found in Part 785.  And that is the approach that should be used here.

The Department further concedes that the true holding of *Armour*—a holding that was explicitly cited in *Greinetz*—applies to the FLSA itself, and thus to *all* of the guidelines – a point recognized recently by this Court in the context of 29 C.F.R. § 785.19.[8]  *Babcock v. Butler Cnty*, 806 F.3d 153, 157 (3d Cir. 2015); *see also* (Progressive Br. 39).[9]

---

[8]    Significantly, the only reference to *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944), in the Department's brief is for the "well-established" principle that under the FLSA "hours worked" are "not limited to the time an employee is actively performing his or her job duties."  (DOL Br.13).  But the Department omits the sentence: "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case," 323 U.S. at 133 – an analysis that, if actually undertaken, plainly dooms the Department's argument here.

[9]    The text of Section 785.18—which states that "rest periods of short duration" are "*customarily* paid for as working time"—also counsels against adoption of the Secretary's current brightline interpretation.  The word

When the predominant benefit test is applied to Progressive's break policy, the undisputed record necessitates entry of judgment for Progressive and Mr. Satell. There is no dispute that Progressive's policy places *no limits* on representatives' breaks (and, as shown above, there is no record evidence supporting the Department's argument that the application of the policy differs from its terms). Because representatives have complete control over the duration and timing of their breaks, they can, by definition, effectively use them for their own purposes. In addition, the undisputed record evidence—in the form of a data-based analysis performed by Dr. Jonathan Guryan—shows that increased breaks actually *decrease* employee productivity at Progressive. (Progressive Br. 14).

In sum, because employees exercise complete control over their breaks and use them for myriad personal benefits—and because Progressive does not receive increased productivity from the application of its break policy—this Court can, and should, rule that under Progressive's uniquely flexible policy breaks are predominantly for the representatives' benefit and are thus non-compensable. *Cf. Babcock*, 806 F.3d at 157-58 (ruling, on a motion to dismiss, that meal periods predominantly benefitted employees *as a matter of law*).

---

"customarily" has a different meaning than the words "invariably" or "always." Indeed, the Department itself defines "customarily," albeit in a different context, as "greater than occasional" but "*less than constant*." 29 C.F.R. § 531.57 (emphasis added). Which is to say, *not* always.

**III.    Contrary to the Department's Arguments, the District Court's Liquidated Damages Award Is Based Solely on Progressive's Asserting Attorney-Client Privilege**

The Department contends that Progressive mischaracterized the District Court's findings and missed the mark by "devot[ing] the bulk of its argument to a discussion of the importance of the attorney-client privilege." (DOL Br. 53-55). The Department then portrays the District Court's ruling as one that made several, alternative findings in support of its award of liquidated damages. (*Id.*). That is not true. The District Court's opinion is clear that its only basis for finding a lack of good faith was Mr. Satell's invocation of the attorney-client privilege. JA-31-32.

It is uncontested that the District Court expressly recognized that employers are not required to seek a legal opinion to establish good faith and that "*courts have found similar efforts [to Progressive's and Mr. Satell's] sufficient to establish good faith.*" *Id.* (emphasis added). Despite this, the Department claims that Mr. Satell's actions "did not persuade the district court that Mr. Satell acted in good faith to comply with the FLSA." (DOL Br. 48). What the Department glosses over, however, is that *the only distinction* the District Court drew between this case and analogous cases finding good faith was that Progressive had invoked the attorney-client privilege over the substance of the legal advice it had obtained. (*Id.*).

Instead, the Department asserts that Mr. Satell, having only a "vague" notion of relevant authority, threw caution to the wind and implemented the break policy despite finding the law "very confusing." (DOL Br. 48-50). That is not true, and the Department's sound bites taken out of context present a misleading story. Mr. Satell made it clear that because the rest period regulation seemed inconsistent with the statute and DOL guidance, he gathered as much information as possible to see what Progressive could lawfully do to meet his employees' expressed desire for greater flexibility in their work schedules. JA-606, 618-20. After reviewing the Department's website and case law, including "the original lead case" [i.e., *Greinetz*], Mr. Satell observed that courts apply a case-by-case analysis, which led him to conclude that Progressive's unique policy was consistent with the flexibility extolled by the Department. JA-601, 618-20. As the briefs filed in this case demonstrate, his conclusion was more than reasonable; it was right.

And the District Court recognized as much. Contrary to the Department's revisionist arguments, the District Court did not reason that Progressive's invocation of privilege "weighed against Progressive's showing of good faith." (DOL Br. 53). Instead, the District Court took the drastic and unprecedented step of establishing *a complete bar* to good faith unless a party waives the privilege and proves that it complied with legal advice. JA-32.

The District Court's approach necessarily punishes parties for asserting the attorney-client privilege. After all, how can a party prove compliance with legal advice without disclosing the substance of underlying communications? As explained in Progressive's opening brief, forcing parties into a dichotomous choice between protecting the confidentiality of attorney-client communications or resigning themselves to double damages no matter what other steps they took to ascertain and follow the law is a clear error of law with far-reaching consequences. (*See* Progressive Br. 47-56).

Likely recognizing the infirmity of the District Court's decision on this subject, the Department distorts the factual record of Mr. Satell's good faith efforts to ascertain and follow the FLSA. As explained above, the Department's contention that Mr. Satell made an uninformed, "confused" decision has no basis in the record. Contrary to the Department's portrayal, Mr. Satell made a reasoned decision based on his thorough review of DOL guidance, the statute, regulations, and case law. This is especially true in light of the undisputedly unique nature of Progressive's policy. As the District Court itself recognized, these efforts are not materially different from those sufficient to establish good faith. (JA-31-32; DOL Br. 50-53; Progressive Br. 48-50).

The Department also implies that Progressive and Mr. Satell cannot show good faith because they did not consult with the Department about the break

policy.  (DOL Br. 55-56).  Once again, this position ignores the District Court's

reasoning and the numerous cases finding good faith, *based on similar efforts as*

*those in this case*, absent consultation with the DOL.  (*See* cases cited at

Progressive Br. 49).

Finally, the Department's resort to *Bankston v. State of Illinois*, 60 F.3d

1249 (7th Cir. 1995), is also unavailing.  (DOL Br. 54).  The Department correctly

notes that the employer there asserted privilege over conversations with an attorney

about "the FLSA's general applicability to CMS employees."  *Bankston*, 60 F.3d at

1255.  Unlike here, however, the employer in *Bankston* was not foreclosed from

establishing good faith because it had asserted the privilege.  Instead, liquidated

damages were awarded based on: (1) evidence that the employer directly

contravened legal advice; and (2) the fact that the employer offered *no evidence* of

steps taken to ascertain the plaintiffs' exempt status.  *Id.* at 1254-55.  That is a far

cry from this case where the District Court recognized the general sufficiency of

Mr. Satell's efforts but disregarded them solely because he exercised his right to

assert the attorney-client privilege.

In sum, the Department "readily acknowledges the importance of the

attorney-client privilege" (DOL Br. 55), but goes to great lengths to distract from

the District Court's clear infringement on that privilege.  Because the District

Court recognized that Progressive's actions were on par with those found to

constitute good faith in other cases, this Court should reverse the District Court's award of liquidated damages.

## IV.    <u>Conclusion</u>

Very few, if any, employers have thought to offer their employees the kind of entirely flexible working hours that Progressive offered its representatives prior to the Department's obtaining a judgment below.  In part, that is because many workplaces require employees (such as salespersons and cooks) to be available when the business is open, and others (such as assembly lines) to work together in one place.  Thus, even if this Court were to reverse the District Court's result and permit employers to try to meet their employees' needs in this way, it is not at all clear how many employers will want to do so.

Although the Department seems to believe that Progressive adopted its novel policy in order to enhance its bottom line (or, as the Department's *amicus curiae* would have it, just for the pleasure of stealing from its employees), the record is to the contrary.  The policy did not benefit Progressive either in terms of hours worked or productivity.  Management adopted it—at its employees' request— because it recognized that a number of its employees faced significant pressures in balancing their work with other personal and family needs, and it listened to those employees.

Unfortunately, the policy that Progressive has been forced to adopt as a consequence of the result reached below—a policy that disallows nearly all breaks of fewer than twenty minutes—will hurt employees by requiring them to take longer breaks than they may want or need.  But that does not bother the Department (which has long agreed that employers are under no obligation to provide any breaks at all) or the Department's *amicus curiae* (whose version of "a better balance" is evidently entirely theoretical, and divorced from the real lives of working people in places like Uniontown and Wyomissing).

When one evaluates the real world consequences of their arguments, the Department and its *amicus* are plainly not on the side of the people they claim to champion.  That is their choice.  But the fundamental question presented for this Court is whether the Congress of the United States ever authorized the Department to outlaw an employer's policy that gives employees absolute and complete control over their own time.  The answer is that it did not and the Department's attempt to claim such a power should be rebuffed.

Respectfully submitted,

Alfred W. Putnam, Jr.
DRINKER BIDDLE & REATH LLP

D. Alicia Hickok
DRINKER BIDDLE & REATH LLP

Lincoln O. Bisbee
MORGAN, LEWIS & BOCKIUS LLP

26

/s/ Sarah E. Bouchard
Sarah E. Bouchard
PA Bar No. 77088
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
215-963-5000
sarah.bouchard@morganlewis.com

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Third Circuit L.A.R. 28.3(d), I, Sarah E. Bouchard, counsel for

Appellant AMERICAN FUTURE SYSTEMS, INC. d/b/a/ PROGRESSIVE

BUSINESS PUBLICATIONS, a corporation, and EDWARD SATELL, certify that

I, as well as Lincoln O. Bisbee, Alfred W. Putnam, Jr. and D. Alicia Hickok are

members of the bar of this Court.

s/ Sarah E. Bouchard
Sarah E. Bouchard

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a) AND THIRD CIRCUIT LAR 31.1

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains **6,253** words.  This word count was performed using Microsoft Word 2010.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typefont using Microsoft Word 2010 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic brief is identical to the text in the paper copies, and McAfee Virus Scan Enterprise Version 8.8, a virus detection program, has been run on the file and no virus was detected.

s/ Sarah E. Bouchard
Sarah E. Bouchard

## CERTIFICATE OF SERVICE

I certify that the foregoing document has been served on all counsel of record via the Court's electronic filing system on December 12, 2016.

s/ Sarah E. Bouchard
Sarah E. Bouchard